**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| ARTIUSID, INC., | § | CASE NO. 23-11007-cgb |
| | § | |
| Alleged Debtor. | § | |

**DECLARATION OF MICHAEL FREDERICK MARCOTTE IN SUPPORT OF DEBTOR'S
MOTION FOR REHEARING AND RECONSIDERATION OF ORDER FOR RELIEF,
OR IN THE ALTERNATIVE FOR STAY PENDING APPEAL**

I, Michael Frederick Marcotte, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following factual assertions are true and correct:

1. I am over eighteen (18) years of age, of sound mind, qualified and competent in all respects to make this Declaration, and do so of my own personal knowledge.

2. Since on or about March 1, 2023, I have been and remain Chairman of the Board, CEO, President and Secretary of artius.iD, Inc., formerly known as Q5id, Inc. (the "Company"). In these various capacities I have personal knowledge of the business operations, financial affairs and strategic plan of the Company. In preparing this Declaration I have relied on and confirmed information provided by other members of the Company's senior management, all of whom report directly or indirectly to me.

3. I offer this Declaration in support of the Company's Motion for Rehearing and Reconsideration of Order for Relief, or in the Alternative for Entry of Stay Pending Appeal filed with the Court of even date herewith (the "Motion for Rehearing"). I have read and reviewed the Motion for Rehearing prior to its filing, and believe the factual assertions contained therein to be true and correct.[1]

4. Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge of the business and financial affairs of the Company; (b) information supplied

---

[1] Capitalized terms used and not otherwise defined herein are intended to have the meaning set forth in the Motion for Rehearing.

to me by other members of the Company's senior management; (c) my review of relevant documents; and (d) my personal observations and opinions based upon all of the foregoing. If called upon to testify, I could and would testify to the facts set forth in this Declaration.

Operations, Management and Reorganization of the Company

5. The Company provides an integrated state-of-the art cyber security solution that allows large enterprises to securely manage access to IT systems, as well as perform background and identity verification checks of employees and customers. Under my leadership as Chairman and CEO, the members of its board and senior management include:

- The former CTO of the Central Intelligence Agency
- The former President (HCS) Global CIO, & CDO of EchoStar/Dish Network/HUGHES(HCS), & SlingTV
- The co-Founder of the National Cybersecurity Center (NCC) and the Founder of the NCC's Rapid Response Center
- The former Global Managing Director of Thompson Reuters
- The founder and former CEO Managing Director of High Artic Energy.
- The former Global Head of Strategy for Ingram Micro

6. Since undertaking the various roles in which I serve I have set about to "re-found" and restructure the Company at all levels, including rebranding, governance, customer base, employees and capital formation. As part of its restructure, the company streamlined operations to essential staff and brought on renowned Fortune 100 technology executives to supervise a complete rebuild of its solution from the ground up.

7. The company recently completed its comprehensive organizational and operational restructuring, which includes a strategy to serve only large-scale enterprise customers through the use of technology designed to be directly implemented into the world's largest technology platforms --from ERP systems to the largest financial institution technology platforms. Customers are being developed in several

key industries, including banking and financial institutions, human capital management institutions (such as PEO's, HR and Payroll companies), and other industries on a global basis.

8. The customers are soliciting enterprise grade cybersecurity solutions that provide identity authentication to eliminate the impact of identity theft and fraud perpetrated in part through cybersecurity and/or data breaches. Several customer pilots are in the process of being secured as part of an initial testing of our new technology, to be followed with an accelerated business development strategy to expand implementations of our patented and unique technology broadly.

Financial Condition of the Company

9. As a part of this overall effort we have fully recapitalized the Company and placed it on sound financial footing. Payroll obligations have been and will continue to be met, in the form of salary, benefits, 401K plan and contributions and insurance for 17 key employees and their families through the PEO (Professional Employer Organization) Trinet. Significant vendor obligations entered into by the previous management team have been either renegotiated or settled. New, sophisticated investors have been engaged that can better support the capital formation roadmap required to scale and sustain the Company.

10. Most significantly, **all uncontested vendor obligations are paid on time, all the time.** With the exception of disputed claims, the Company is generally paying its debts as they become due and has good relations with its vendors. But for the interruption of its business caused by the entry of the Order for Relief, the Company will have sufficient liquidity and sources of revenue to continue to do so for the foreseeable future. In addition, we are in the process of securing sufficient funds to provide additional capital which would cover costs of operating the Company for at least two years at the current burn rate.

11. Based upon all of the foregoing, I respectfully aver and believe that if the Court is presented with and considers with all of the evidence relevant to the Company's liquidity and financial condition it will conclude that the Company is "generally paying its debts as such debts become due."

The New York Litigation

12. The New York Litigation (as defined in the Motion for Rehearing) involves claims and counterclaims between each of the three Petitioning Creditors on the one hand and the Company on the other. In the view of the Company all or substantially all of the work product provided by the Petitioning Creditors at exorbitant prices was faulty, ineffective and not useful, and had to be discarded and completely redone. For that reason, the Company not only contested the claims asserted by the Petitioning Creditors in the New York Litigation, but interposed significant counterclaims seeking damages from those parties to compensate the Company for the losses sustained as a result of their defective and deficient work product.

Irreparable Harm Caused by Entry of the Order for Relief

13. I have reviewed the Court's Order for Relief and discussed within the Company and with its outside counsel the legal effect of the entry of that Order and ensuing appointment of a bankruptcy trustee. As I understand it, in the event the Order for Relief remains in place and in force and effect, the following irreparable harms would befall the Company:

- Payments to the PEO (Professional Employer Organization) covering salaries, benefits and insurance for 17 employees and their families would discontinue, causing those employees immediate financial harm and requiring that they seek other employment, thus causing further harm and disruption to the Company's business operations and efforts.

- Due to the sensitive and complex nature of its cybersecurity software coding practice, no engineering positions are outsourced; all employees are hand-selected as top talented professionals in the field, attracted to the Company through executive level headhunters over more than a year of identification, recruitment and onboarding.

- Should the Company be unable to make payroll, these employees who are essential in the development of our technology and the operation of our business, including ongoing capital raising activities which have ensured continued operations since 2018 and through the 2023 transformation, will be permanently disrupted.

- Timely payments to the many uncontested vendors and suppliers on whose products, goods and services the Company relies would be discontinued.

- The vision, experience, relationships and leadership that I and the elite senior management team have sought to bring to the Company in the course of its transformation as described in this Declaration would be disrupted and grind to a halt.

- The proprietary technology that I developed for the benefit of the Company would fall into the hands of people who had nothing to do with its development -- nothing short of a theft of valuable intellectual property.

14. All of the foregoing harm would befall the Company at a sensitive and critical point in the process of raising funds to execute on its first customer software deployments. Our ongoing capital raising and access to capital markets would be immediately impacted.

15. The Order for Relief would be disclosed and discoverable in the course of investor due diligence. In my experience venture capital firms will not invest in startups engaged in significant, open

legal issues, as such can have a devastating impact on overall operations in a new company. Without access to additional capital, the Company cannot onboard engineers to support the customer pilot software deployments.

16. Upon all or significantly all of the foregoing occurrences, the substantial investor value we have sought to create would be irretrievably lost to the Company -- even though, as I respectfully submit to the Court, the Company is "generally paying its debts as such debts become due" and can continue to do so for the foreseeable future.

Dated this ___ day of July, 2024.        E-signed by:

Signed by:

*Michael Frederick Marcotte*
Michael Frederick Marcotte

29 July 2024 | 17:33:00 BST