IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-11007-cgb |
| | § | |
| ARTIUSID, INC., | § | Chapter 7 |
| | § | |
| Alleged Debtor. | § | |

**CONSENT STIPULATION AND MOTION FOR DISMISSAL
OF INVOLUNTARY PETITION UNDER CHAPTER 7**

**This Motion requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service,
the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.[1]**

Alleged Debtor, artius.iD ("**Alleged Debtor**") and Petitioning Creditors, Xmogrify, LLC, Goldstein Consulting Services, LLC, and Rearc LLC ("**Rearc**") (collectively, the "**Petitioning Creditors**," and with the Alleged Debtor, the "**Stipulating Parties**"), by and through their undersigned counsel and pursuant to section 303(j)(2) of the Bankruptcy Code, 11 U.S.C. §303(j), or in the alternative section 707(a) of the Bankruptcy Code, 11 U.S.C. §707(a), and this Court's *Order Abating Proceedings on Debtor's Motion for Rehearing, Granting Stay of Order for Relief Pending Ruling on Consensual Dismissal of Involuntary Case, and Setting Procedures for Approval of Dismissal* [Docket No. 83] (the "**Stay Order**"), hereby consent, stipulate, agree and move the Court for entry of the annexed [Proposed] Order dismissing this involuntary Chapter 7

---

[1] The negative notice language set forth above is in conformity with Local Rule 9014(a) of this Court, and expressly contemplated in the Stay Order. Stay Order at para. 2. The Stipulating Parties believe that consideration of this matter by negative notice is appropriate. See In re Positron Corp., 556 B.R. 291, 294 (Bankr. N.D. Tex. 2016) (noting as to section 303(j) dismissal, "if upon notice no objection is filed and the court finds nothing untoward with the proposed dismissal, dismissal should be approved.").

case and, if required, approving the settlement of the claims asserted by the Petitioning Creditors in the Involuntary Petition.[2]

## INTRODUCTORY STATEMENT

1.  The Stipulating Parties come before the Court seeking approval of their consensual dismissal of this involuntary case pursuant to section 303(j)(2) of the Bankruptcy Code. 11 U.S.C. § 303(j)(2). In proceeding under that section of the Code the Stipulating Parties are aligned in the view that the entry of the Stay Order operates to restore the status quo as existed before entry of the Order for Relief (defined and described below), such that the Court may address the proposed dismissal under that section of the Code. In the alternative, and to the extent deemed necessary by the Court, the Stipulating Parties also seek dismissal of this involuntary case under section 707 of the Bankruptcy Code and/or approval of their settlement under Federal Rule of Bankruptcy Procedure 9019.

2.  As described more fully below, the Stipulating Parties have resolved their differences by payment of a fixed, agreed sum to the trust account of Petitioning Creditors' New York counsel, to be retained in that account pending the dismissal of this involuntary case by order that has become final and is no longer subject to rehearing or appeal.[3] With that payment, it is the position of the Alleged Debtor that it is generally paying its debts as they become due and is not properly the subject of this or any other case under the Bankruptcy Code, and accordingly that the dismissal should be approved under such of the foregoing authorities as the Court may determine govern the situation before it.

---

[2] Pursuant to Local Rule 9013(b) of this Court, a form of [Proposed] Orders is attached hereto as Exhibit A, and has been separately uploaded for consideration by the Court.

[3] As is customary in the settlement of a matter in litigation, the settlement also provides for the dismissal of the underlying New York Litigation and the exchange of mutual releases between the Alleged Debtor and Petitioning Creditors.

## PROCEDURAL HISTORY

3. On November 30, 2023, the Petitioning Creditors filed an *Involuntary Petition* under section 303(a) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), 11 U.S.C. § 303(a) [Docket No. 1], as well as a *Verified Statement of Petitioning Creditors in Support of Involuntary Chapter 7 Petition* [Docket. No. 2], thus initiating this involuntary bankruptcy case under Chapter 7 of the Bankruptcy Code (the "**Involuntary Case**").

4. On or about December 19, 2023, artius.iD filed a *Motion to Dismiss Case* [Docket No. 9] on the ground that there was a bona fide dispute between the Parties as to the amount due to the Petitioning Creditors [Docket No. 9] (the "**Motion to Dismiss**").

5. By Opinion and Order dated July 23 and 24, 2024, , the Court denied the Motion to Dismiss [Docket No. 60, 61] (respectively, the "**303(b) Opinion**" and "**303(b) Order**"), and proceeded to enter an *Order for Relief Under Chapter 7 Against Artiusid, Inc.* [Docket No. 62] (the "**Order for Relief**").

6. On July 28, 2024, artius.iD filed *Debtor's Motion for Rehearing of the Order for Relief [D.E. No. 62], or in the Alternative for Stay Pending Appeal, and Accompanying Memorandum of Law* [Docket No. 70] (the "**Motion for Rehearing**"). By *Order Setting Status Conference on Motion for Rehearing of the Order for Relief* dated July 31, 2024 [Docket No. 74] the Court convened a Status Conference on August 1, 2024 (the "**Status Conference**"), at which the Alleged Debtor and Petitioning Creditors announced and confirmed on the record that they had reached a settlement and desired to pursue a consensual dismissal of the Involuntary Petition and this case under section 303(j) of the Bankruptcy Code, 11 U.S.C. §303(j).

7. On the basis of that development and at the mutual request of the Alleged Debtor and Petitioning Creditors, the Court announced that the Order for Relief was stayed, the Chapter 7 Trustee was discharged of his responsibilities except as stated on the record, and that further

proceedings on the Motion for Rehearing were abated pending the Court's disposition of a stipulation and/or motion for dismissal under section 303(j) or 707 of the Bankruptcy Code, as appropriate. 11 U.S.C. §§303(j), 707. The Court's decision as announced on the record was formalized by entry of the *Order Abating Proceedings on Debtor's Motion for Rehearing, Granting Stay of Order for Relief Pending Ruling on Consensual Dismissal of Involuntary Case, and Setting Procedures for Approval of Dismissal* on August 8, 2024 [Docket No. 83] (the "**Stay Order**").

8. Pursuant to the Stay Order and the foregoing provisions of the Bankruptcy Code, the Stipulating Parties file this Consent Stipulation and Motion seeking dismissal of the Involuntary Petition and this bankruptcy case.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

10. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory basis for the relief requested is 303(j)(2) of the Bankruptcy Code, 11 U.S.C. §303(j), or in the alternative section 707(a) of the Bankruptcy Code, 11 U.S.C. §707(a).

## RELIEF REQUESTED

12. The dismissal of an involuntary petition on consent of all petitioners and the alleged debtor is directly addressed and governed by section 303(j)(2) of the Bankruptcy Code. In the alternative, and without concession that the Order for Relief as stayed by the Stay Order has any present legal effect, the Stipulating Parties also seek dismissal of this involuntary case under section 707(a) of the Bankruptcy Code and/or approval of the settlement under Fed. R. Bankr. P. 9019. In seeking this relief, the Stipulating Parties also rely on the inherent authority of the Court

to have issued the Stay Order, and the legal effect of that Stay Order on the procedural posture of this case and the proper basis for its dismissal. Each of these provisions is addressed below.[4]

## LEGAL ARGUMENT

A. **The Effect of the Stay Order is to Suspend the Legal Effect of the Order for Relief and Return the Case and Parties to the Status Quo as Existed Prior to Entry of the Order for Relief**

13. The effect of the Stay Order is to suspend the legal effect and operation of the Order for Relief and return the situation to the status quo as existed prior to its entry. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.). The Supreme Court has described the legal effect of a stay as "temporarily suspending the source of authority to act -- the order or judgment in question," adding for emphasis that a stay "suspends judicial alteration of the status quo." *Nken v. Holder*, 556 U.S. 418, 429 (2009) (Roberts, C.J.) (*quoting Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986)).

14. Consistent with these principles, controlling cases from the Fifth Circuit Court of Appeals demonstrate that a stay suspends the legal effect of pending orders so as to maintain the status quo as existed prior to its entry. For example, in *Tex. All. v. Hughes*, 976 F.3d 564, 565 (5th Cir. 2020), the district court had enjoined enforcement of a Texas bill that eliminated straight-ticket voting because the injunction would "change election laws eighteen days before early voting begins, (and) we recognize the value of preserving the status quo in a voting case on the eve of an election." Id. at 567. Based on the stay entered by the Circuit Court, the district court's order

---

[4] While the Stipulating Parties proceed here to address both sections 303(j) and 707(a) as grounds for dismissal, it is important to keep in mind that only one, and not both, of those sections needs to be satisfied in order for the Court to grant dismissal as requested.

granting the preliminary injunction had no effect during the pendency of the appeal, and the election laws in place prior to the stayed order remained in effect. See also *Veasey v. Perry*, 769 F.3d 890, 891 (5th Cir. 2014) (granting a stay pending appeal of a district court's order enjoining implementation of a voter-ID law in order to preserve the "status quo" of election laws due to an upcoming election).

15. The result is no different here as affects the Order for Relief. As firmly established by the controlling cases cited above, the effect of the Stay Order is to suspend the effect of the Order for Relief and reinstate the status quo as existed prior to its entry. It follows that since the entry of the Stay Order, the Alleged Debtor is operating in the involuntary gap period under section 303(f), subject only to the ordinary course and reporting restrictions to which it agreed in the Stay Order. Accordingly, and for the additional reasons set forth in paragraphs 23-26, *infra,* the Stipulating Parties respectfully submit that their consensual dismissal of this involuntary case is subject to the process and procedures established in section 303(j)(2), and not section 707.[5]

**B.    The Court Should Dismiss This Involuntary Case on Consent of the Stipulating Parties Under Section 303(j)(2)**

16. Section 303(j)(2) of the Bankruptcy Code provides that "[o]nly after notice to all creditors and a hearing may the court dismiss a petition filed under this section . . . (2) on consent of all petitioners and the debtor." 11 U.S.C. §303(j)(2). As announced on the record at the Status Conference the Alleged Debtor has reached a full, complete, and now fully funded settlement with the Petitioning Creditors, and accordingly the Stipulating Parties now seek dismissal of the Involuntary Petition "on consent" as expressly provided in section 303(j)(2).

---

[5] Nevertheless, as directed in the Stay Order, the Stipulating Creditors alternatively seek dismissal of this involuntary case under section 707 of the Code as well.

6

17. In furtherance of that effort, and as directed by paragraph 2 of the Stay Order, the Alleged Debtor has filed the *Declaration of Michael Frederick Marcotte Certifying Matrix of Creditors* [Docket No. 84] (the "**Marcotte Declaration**"), and served notice of this Consent Stipulation and Motion on all of those creditors at their last known business addresses set forth in the matrix.[6]

18. The most recent case from within the Fifth Circuit addressing consensual dismissal under section 303(j)(2) appears to be *In re Positron Corp.*, 556 B.R. 291, 294 (Bankr. N.D. Tex. 2016), relying on both prior Fifth Circuit precedent and legislative history in placing the focus on the interests of all creditors and ensuring that there is no harm to non-petitioning creditors from an agreed dismissal. Quoting from a pre-Bankruptcy Code case, the Court wrote, "[T]he notice provisions of [what is now § 303(j)] were designed to prevent injurious settlements and to protect the estate for creditors other than those who brought the petition." *Wynne v. Rochelle*, 385 F.2d 789, 794 (5th Cir. 1967).

19. There is nothing "injurious" about the settlement that provides the basis for the consensual dismissal of this involuntary case. As set forth in the Marcotte Declaration, all of the other creditors listed on the matrix and list of creditors filed under penalty of perjury hold claims that have been paid in full or in the ordinary course since the petition date, or are pending, contingent, or in the case of a single claim among more than 40 listed, disputed and unliquidated.[7] Following the consensual dismissal of this involuntary case, the creditor asserting that claim will

---

[6] The list of creditors attached to the Marcotte Declaration also sets forth the status of the debtor-creditor relationship with each such creditor as of the date of the Declaration.

[7] It is relevant here that unless a debtor has "fewer than twelve holders" of eligible claims, an involuntary case must be prosecuted "by three or more entities" holding eligible claims, and cannot be maintained by a single creditor. See 11 U.S.C. §303(b)(1)(2).

7

retain all of its rights in the pending state court litigation in Oregon that was stayed by the filing of the Involuntary Petition, and accordingly suffer no injury arising from the dismissal.

20. The Court in *Positron* then found further support for its analysis in the legislative record surrounding section 303(j). "[T]he legislative notes make it clear that '[t]he purpose of the subsection is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors [] that wish to see relief ordered with respect to the debtor but that did not participate in the case [] are left without sufficient protection.'" Id at 294, *quoting* H.R. Rep. No. 95-595, at 324 (1977); S. Rep. No. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6370.

21. There is nothing "collusive" about the settlement the Alleged Debtor has reached with the Petitioning Creditors. After months of the New York Litigation in which the Alleged Debtor aggressively disputed the claims asserted by the Petitioning Creditors and interposed its own counterclaims, the Alleged Debtor then challenged those claims as asserted in the Involuntary Petition as "subject to a bona fide dispute as to validity or amount" under section 303(b) of the Bankruptcy Code. See Motion to Dismiss. Within days after this Court denied the Motion to Dismiss in the 303(b) Opinion and Order and held that the claims were not subject to a bona fide dispute, the Stipulating Parties negotiated a full and complete settlement of all disputes between them, and promptly announced and confirmed that settlement on the record at the Status Conference within minutes after its essential terms were agreed.

22. Moreover, unlike the more complex, deferred section 303(j)(2) settlement that ultimately was rejected in *Positron*, the financial obligation undertaken by the Alleged Debtor to the Petitioning Creditors settlement has been fully funded and provides for "an immediate dismissal of the case." *Id*. at 294. Thus, the understandable concern in *Positron* over what was presented as a "structured dismissal" in that case under which a joint motion to dismiss would be

filed at some indeterminate date in the future -- only "upon completion of all terms included in the Agreement for Structured Dismissal" -- is not present here. *Id*. at 293-295 (also noting that "controversy dogs the structured dismissal"). The settlement payment owed by the Alleged Debtor to the Petitioning Creditors has been fully funded into an attorney trust account, and the immediate dismissal that the Stipulating Parties seek is in no way a "structured dismissal."

C.   **Dismissal of Chapter 7 Case Under Section 707(a)**

23.   In light of the fact that the Order for Relief has been stayed and is of no legal effect as set forth above, the Alleged Debtor believes and respectfully submits that section 707(a) of the Bankruptcy Code is inapplicable to these proceedings.[8] Dismissal under section 707(a) typically is sought by *a creditor* in a case involving "unreasonable delay that is prejudicial to creditors" or noncompliance with the fee payment provisions of the Code. 11 U.S.C. §§ 707(a)(1) & (3); 6 *Collier on Bankruptcy* ¶ 707.03[1][a] & [1][c].(16th ed. 2018). None of those circumstances are present here, and the Alleged Debtor and Petitioning Creditors seek dismissal on consent as expressly contemplated in section 303(j)(2).

24.   The applicability of section 303(j)(2) is supported by the longstanding rule of statutory construction that the specific controls over the general. That is, although Section 707(a) provides a general "for cause" rule of dismissal in Chapter 7 cases, dismissal of an involuntary case before entry of an order for relief is governed by the more specific provisions of section 303(j). As Justice Scalia held in a unanimous 8-0 ruling from the Supreme Court addressing various subsections of Bankruptcy Code section 1129(b) in *RadLAX Gateway Hotel, LLC v.*

---

[8] Sections 707(b) and 707(c) provide in certain circumstances for dismissal of Chapter 7 cases against individual debtors, and section 707(c) further provides for dismissal of voluntary Chapter 7 cases. 11 U.S.C. §§ 707(b) ("the court … may dismiss a case filed by an individual debtor") & 707(c) ("the court … may when it is in the bests interest of the victim dismiss a voluntary case filed under this chapter by a debtor who is an individual"). Because this Motion requests dismissal of an involuntary corporate Chapter 7 case, neither section 707(b) nor 707(c) addressing involuntary cases against individual debtors apply here.

9

*Amalgamated Bank*, 566 U.S. 639, 645 (2012) "'[I]t is a commonplace of statutory construction that the specific governs the general.' . . . That is particularly true where . . . 'Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.'" (citations and internal quotations omitted).

25. In line with *RadLAX*, as the Bankruptcy Code is such a "comprehensive scheme" this principle of statutory construction has been applied repeatedly to provisions of the Bankruptcy Code by this Circuit and others. *See e.g,* ; *Avion Funding, L.L.C. v. GFS Indus., L.L.C. (In re GFS Indus., L.L.C.)*, 99 F.4th 223, 229 (5th Cir. 2024) (applying the "specific/general canon" to hold that the "more specific provision" of the Bankruptcy Code governed); *Cantwell-Cleary Co. v. Cleary Packaging, LLC (In re Cleary Packaging, LLC),* 36 F.4th 509, 513 (4th Cir. 2022)*.* ("[W]hile § 523(a) references numerous discharge provisions of the Bankruptcy Code, § 1192(2) is the more specific, addressing only Subchapter V discharges.").

26. The logic of this long-established rule of construction[9] is inescapable. To construe section 707(a) so broadly as to apply to the consensual dismissal of an involuntary petition would render section 303(j) superfluous. *See, e.g.*, *RadLAX,* 566 U.S. at 645 ("the [specific/general] canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'" (internal quotations omitted)).

27. Even if section 707(a) applies to dismissal of an involuntary case before entry of an order for relief, "cause" within the meaning of that section exists here. Where the debtor seeks dismissal, "cause" exists where dismissal is in the bests interests of the debtor and is not prejudicial

---

[9] "This rule applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the general provisions would include." *RadLAX*, 566 U.S. at 646 (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)).

to creditors. 6 *Collier on Bankruptcy* ¶ 707.03[3] (16th ed. 2018).

28. The best interests of the Alleged Debtor clearly favor dismissal of this case. Since the filing of the Involuntary Petition it has continued within the involuntary gap period to operate and conduct its business in the ordinary course, and to pay all of its undisputed debts in such ordinary course as they become due. Having agreed upon and fully funded a settlement with the Petitioning Creditors in short order after this Court determined that their claims were not subject to bona fide dispute, the Alleged Debtor neither needs nor desires the relief and protection of the Bankruptcy Code and this Court in order to manage its affairs.

29. Nor does dismissal of this involuntary case cause prejudice to creditors. The Petitioning Creditors consent to dismissal, all but one of the other creditors as of and since the Petition Date have been paid or are being paid in the ordinary course, and the sole remaining creditor holding a disputed claim retains its claims and defenses in pending state court litigation.[10]

30. Nor are any other indicia of prejudice to creditors presented here: the Alleged Debtor has not delayed but has promptly settled the claims of the Petitioning Creditors after the Court held those claims not to be the subject of a bona fide dispute; the Alleged Debtor has not been discovered engaging in any misconduct; and the Alleged Debtor has no intent to re-file a bankruptcy case.

31. To the extent relevant, all of the factors properly addressed in considering the voluntary dismissal of a case under section 707(a) operate in favor of approving the proposed dismissal under that section.

---

[10] Insofar as that sole disputed creditor is concerned, liberating the Alleged Debtor from the obligations and attendant expense imposed in a case under Chapter 7 or 11 of the Bankruptcy Code would enable it to pursue its business plan and better position it to pay the claim in the event that creditor obtains a judgment in the Oregon state court, which remains the proper forum in which to litigate and liquidate the amount of that disputed claim.

**D.   Approval of the Settlement Under Bankruptcy Rule 9019**

32.  Federal Rule of Bankruptcy Procedure provides generally with respect to settlements as follows:

> On motion *by the trustee* and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed.R. Bankr. P. 9019(a) (emphasis added).

33.  In light of the fact that the Order for Relief has been stayed and is of no legal effect as set forth above, the Alleged Debtor believes and respectfully submits that the requirements of Bankruptcy 9019 do not apply to its agreed settlement with the Petitioning Creditors. First, under the Stay Order the Trustee was "discharged of any responsibility to act as a Trustee under section 704 of the Bankruptcy Code." Stay Order, paragraph 3b. The reference to a trustee (as made interchangeable with a debtor in possession by section 1107(a) in a case under Chapter 11), confirms that Rule 9019 only applies in a case in which an order for relief has been entered and is in effect and a trustee (or debtor in possession) exists. *See, Hartford Underwriters Insurance Co. v. Union Planters Bank,* 530 U.S. 1 *(2000)* (strictly construing reference to "trustee" in section 506(c) surcharge provision of Bankruptcy Code as precluding surcharge claim by any other party); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) (plain meaning of a statute controls).

34.  Moreover, as explained above, by virtue of the Stay Order the parties and case are returned to the status quo as existed prior to entry of the Order for Relief, and the Alleged Debtor continues to operate in accordance with section 303(f) of the Bankruptcy Code, subject only to the ordinary course restrictions imposed by the Stay Order. As it is in the ordinary course of business for a commercial party to settle contested claims and counterclaims in pending litigation and grant

releases in connection with such a settlement, and the purpose and effect of the settlement here is to obtain a dismissal of this involuntary case, the Stipulating Parties submit that for this reason as well Rule 9019 is not implicated here.

35. Nevertheless, should the Court deem Rule 9019 applicable, the Alleged Debtor respectfully submits that its proposed settlement with the Petitioning Creditors falls within the range of reasonableness as required for approval under that Rule. To begin, the decision to approve a "compromise lies within the discretion of the trial judge." *Matter of Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir. 1984).

36. In seeking approval of a compromise or settlement, the trustee bears the burden of establishing that the compromise or settlement "is fair, equitable, and in the best interest of the estate." *In re DeRosa-Grund*, 567 B.R. 773, 785 (Bankr. S.D. Tex. 2017) (*quoting In re Roqumore*, 393 B.R. at 480). "The trustee's burden is not high. The trustee need only show that his decision falls within the range of reasonable litigation alternatives." *Id.* (cleaned up).

37. As is often true of litigation settlements, the precise monetary terms of the settlement here are confidential between the Debtor and Petitioning Creditors. For purposes of a Rule 9019 analysis, however, the Debtor can disclose that the settlement involves the single payment of a fixed sum that is less than the $975,000 amount of the claims asserted by the Petitioning Creditors[11] that the Court held in its Dismissal Order were not subject to a bona fide dispute; that the full settlement amount has been wired to the trust account of Petitioning Creditors' New York attorney handling the New York Litigation in state court and is to be retained in that account pending the finality of an Order dismissing this bankruptcy case and the voluntary dismissal of that Litigation as required by the Stay Order; and that the settlement contemplates full

---

[11] See Involuntary Petition at pp. 2-3 (asserting claims aggregating $975,272.89); Verified Statement of Petitioning Creditors in Support of Involuntary Petition [Docket No. 2] (asserting claims of "approximately $975,273).

mutual releases between all Petitioning Creditors and the Debtor, with no further payments nor supervision or retention of jurisdiction by this Court. In short, the purpose of the settlement was to resolve the claims of the Petitioning Creditors so as to obtain a dismissal of the Involuntary Petition under section 303(j), and its amount should remain confidential in accordance with the Stipulating Parties' agreement.

38. Further to this point, the Alleged Debtor respectfully submits that with the Court having determined in the 303(b) Opinion and Order that the claims asserted by the Petitioning Creditors are not subject to bona fide dispute, and in so doing largely eviscerated the Alleged Debtor's counterclaims asserted in the New York Litigation,[12] any cash settlement by the Alleged Debtor at an amount less than the $975,000 face amount of the Petitioning Creditors' claims falls within the range of reasonableness as required for approval under Rule 9019. This is especially so where as part of the settlement the Alleged Debtor and Petitioning Creditors are exchanging mutual releases and, as here, have no further commercial dealings with one another. In light of these circumstances, a settlement for a single cash payment in an amount less than the claims held by this Court not to be the subject of a bona fide dispute does not fall below the low end of the range of reasonableness and should be approved under Bankruptcy Rule 9019 if such approval is required.

WHEREFORE, on the basis of the foregoing facts, circumstances and authorities, the Stipulating Parties respectfully submit that the Court should enter the [Proposed] Order annexed hereto as Exhibit A, dismissing the involuntary petition and this involuntary case.

---

[12] E.g., 303(b) Opinion at p.2 ("While there is pending litigation concerning the creditors' claims, and even pending counterclaims against the creditors, the evidence for the alleged debtor's position is thin and insubstantial.").

Dated: August 15, 2024                                              Respectfully Submitted,

| | |
|---|---|
| **BAKER & McKENZIE LLP** | **ROSS, SMITH & BINFORD, PC** |
| By: */s/ Mark D. Bloom* | By: */s/ Jason Binford* |
| Alexander D. Burch | Jason Binford |
| 800 Capitol St., Suite 2100 | 2901 Via Fortuna, Bldg 6, Suite 450 |
| Houston, Texas 77002 | Austin, TX 78746 |
| Telephone: (713) 427-5000 | Telephone: (512) 351-4778 |
| Facsimile: (713) 427-5099 | Jason.binford@rsbfirm.com |
| alexander.burch@bakermckenzie.com | |

-and-

Mark Bloom (*pro hac vice*)
Sabadell Financial Center
1111 Brickell Avenue
10th Floor
Miami, Florida 33131
Telephone: (305) 789 8927
Facsimile: (305) 789 8953
mark.bloom@bakermckenzie.com

*Counsel for Debtor artuis.iD*