**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 23-11007-cgb |
| | § | |
| **ARTIUSID, INC.,** | § | Chapter 7 |
| | § | |
| Debtor. | § | |

**COLLABORATIVE VISION LLC'S OBJECTION TO CONSENT STIPULATION AND
MOTION FOR DISMISSAL OF INVOLUNTARY PETITION UNDER CHAPTER 7
(re: Docket Nos. 83, 88)**

TO:   THE HONORABLE CHRISTOPHER G. BRADLEY, UNITED STATES
BANKRUPTCY JUDGE

Collaborative Vision LLC ("CV"), by and through its undersigned counsel, hereby objects (this "Objection") to the *Consent Stipulation and Motion for Dismissal of Involuntary Petition Under Chapter 7* [Docket No. 88] (the "Dismissal Motion") filed by debtor artius.iD, Inc. f/k/a Q5iD, Inc. (the "Debtor"[1], and together with CV, the "Parties") and the Petitioning Creditors (as defined in the Dismissal Motion). In support of this Objection, CV respectfully states as follows:

**Preliminary Statement[2]**

1.      This Debtor—and it is certainly a Debtor, no longer alleged—is a bad actor. This Court has reviewed and heard a plethora of evidence demonstrating that the Debtor played catch me if you can with the Petitioning Creditors until it was finally caught, even going so far as to change its name, convert from an Oregon corporation to a Texas corporation without notice during the middle of a trial with CV, and delete its old website just before the Petitioning

---

[1] As already explained by the Petitioning Creditors, the Debtor shut down Q5iD, Inc. and secretly reorganized it into a new entity, artius.ID, Inc., to avoid paying its debts and to give the Debtor the appearance of being a legitimate business that has not been sued by those it employed to develop its technology. *See* Docket No. 16 ¶¶ 5, 27. Additionally, artius.ID, Inc. is no longer an alleged debtor because it has been adjudicated a debtor under Chapter 7 of the Bankruptcy Code pursuant to this Court's order for relief. Docket No. 62.

[2] Capitalized terms used but not defined in this Preliminary Statement are defined elsewhere in the Objection.

1

Creditors filed the Involuntary Petition. Now that the Debtor is firmly ensconced in bankruptcy after losing its trial on the Involuntary Petition and the Court's entry of its Order of Relief, the bright light of bankruptcy law demands transparency and threatens to expose this Debtor for what it really is. In an effort to return to the shadows, the Debtor has hastily offered to pay off the Petitioning Creditors, thereby attempting to obtain backdoor dismissal of its *Chapter 7 case* under section 303(j), which governs the dismissal of *involuntary petitions*. Nonetheless, this Court's entry of the Petition for Relief precludes 303(j) relief and limits the Debtor's available relief to dismissal of the case under the more exacting standard set forth in Bankruptcy Code section 707(a), which requires it to show *cause* for dismissal. The Debtor has not and cannot show cause for dismissal of the case given the existence of unpaid creditors, CV included, who would be prejudiced by such dismissal, as described more fully below.

2.        But even if section 303(j) did apply, the Debtor fails to overcome this Objection given that section 303(j)(2) was designed to protect creditors just like CV, regardless of whether their claim is subject to a bona fide dispute, from settlement dismissals that benefit only the Debtor and the Petitioning Creditors.

### Background

3.        CV is an Oregon limited liability company that provides consulting and staffing services to a wide range of businesses nationally,[3] including direct hire, contingent employment and staff augmentation services. Lisa Matar is CV's founder and sole member.

**A.        CV's Prepetition Relationship with the Debtor and Unpaid Invoices for Services.**

4.        On or about December 11, 2018, the Debtor entered into a Contingent and Direct Hire Client Service Agreement (the "Client Service Agreement") with CV, a copy of which is

---

[3] For example, CV has placed over 50 people at Intel and McAffee, including in their Plano, Texas, offices. CV is a registered foreign entity in the state of Texas which has done business and paid franchise taxes in the state.

4861-2922-1089.4

attached as **Exhibit CV-1**. Pursuant to the Client Service Agreement, the Debtor agreed to pay CV 18% of the annual base salary of any employment candidate identified through CV's placement services whom the Debtor hired as a salaried worker (the "Placement Fee"). The Client Service Agreement also set forth a payment structure for hourly employees that included a conversion fee if they were later converted into salaried employees. The relationship between the Parties continued for nearly two years until the Parties amended the Client Service Agreement in 2021 at the request of the Debtor for the purpose of assisting the Debtor with cash flow management through extended payment terms, which CV agreed to in order to help the Debtor raise money and build.

5.       On or about November 4, 2021, the Debtor entered into an Addendum to the Client Service Agreement with Collaborative Vision (the "Addendum"), a copy of which is attached as **Exhibit CV-2**. Among other things, the Addendum: (i) increased CV's Placement Fee from 18% to 20%; (ii) gave CV the exclusive right to recruit for the first 45 days of any open employment positions; (iii) automatically renews for successive one-year terms, subject to termination by the Parties pursuant to the terms thereof; and (iv) contains an acceleration clause upon the Debtor's failure to make payments or upon its insolvency.

6.       Since entering into the Client Service Agreement in 2018, as modified by the Addendum in 2021, CV recruited thirty-five (35) individuals whom the Debtor inevitably hired as employees, thereby delivering substantial value to the Debtor as it competed for skilled workers in a challenging labor market. CV invoiced the Debtor regularly for the services it provided under the Client Service Agreement, with each invoice corresponding to the percentage of a particular employee's salary to which CV was entitled under the agreement's payment formula.

4861-2922-1089.4

7.      Nonetheless, beginning approximately in May 2022, the Debtor largely stopped paying CV's invoices (the "Unpaid Invoices") in connection with twenty-two (22) of the recruits that CV staffed for the Debtor, even as the Debtor continued to rely on CV for staffing and the labor provided by recruits placed by CV. Due to the Debtor's defaults, CV is owed not less than $344,260.18 in connection with the Unpaid Invoices, plus accrued and unpaid interest, as summarized on the chart attached hereto as **Exhibit CV-3**, which includes true and correct copies of the Unpaid Invoices.

8.      In November of 2022, the Debtor hired CV's principal, Ms. Matar, to represent the Debtor at a National Minority Supplier Development Council industry conference in New Orleans pursuant to the terms of the Client Service Agreement. CV invoiced the Debtor $9,667.25 for consulting fees and reimbursement of travel expenses (collectively, the "Consulting Fee") on or about November 12, 2022, payable on December 12, 2022. As of the date hereof, the Consulting Fee remains unpaid and outstanding.

9.      On December 9, 2022, CV provided the Debtor with 24 hours' written notice of its termination of both the Addendum and the Client Service Agreement due to the Debtor's insolvency, as well as its failure to make payments as required by the Parties' agreement.

**B.      The $200,000 Emergency Payroll Loan**

10.     In October of 2022, the Debtor, through its management, approached CV for an emergency payroll loan. Specifically, the Debtor sought a loan from CV in the amount of $200,000 (the "Emergency Payroll Loan"). The Debtor represented that it expected to receive a substantial investment in the very short term such that CV would face little risk from loaning funds to the company. Having concern for the financial well-being of the Debtor's staff due to having recruited a substantial percentage of them itself, CV agreed to loan the Debtor $200,000.

4

11.     On October 14, 2022, the Debtor and CV entered into a loan agreement in the form of a Note Purchase Agreement and a Nonnegotiable Promissory Note in favor of CV in the amount of $200,000 (together, the "Note"), a copy of which is attached hereto as **Exhibit CV-4**. Pursuant to the Note, CV had the right to convert all or any portion of the Debtor's indebtedness to CV into shares of the Debtor, but CV never exercised that right. By its terms, the Note was due and payable in full on February 14, 2023, and failure to pay within ten days of that date is an express event of default under the Note. The Debtor has made no payment whatsoever on the Note; the Debtor remains in default, and the $200,000 of principal remains outstanding and past-due to CV, exclusive of interest and attorneys' fees.

C.      **The Debtor's Empty Promises to Pay**

12.     From January of 2023 through the commencement of the Oregon Lawsuit in April of 2023 (discussed below), Ms. Matar corresponded with the Debtor's principals via email regarding unpaid and past-due amounts owed to CV (the "Email Correspondences"). A sampling of the Email Correspondences is attached hereto as **Exhibit CV-5**.

13.     In response to Ms. Matar's correspondences, the Debtor engaged in its signature charade of empty promises to pay, consistent with this Court's findings on the record. *See* Status Conference Order at 4 ("The Debtor's representatives were repeatedly promising payment of the Petitioning Creditors' large invoices but then not making the payments[.]"). For example:

   a.   On January 20, 2023, Debtor's representative Dominic O'Dierno emailed Ms. Matar suggesting that the Parties (i) walk through the Debtor's payment plan on both the Notes and the Unpaid Invoices, and (ii) explore a potential debt for equity swap. Ex. CV-5 at 10.

   b.   On February 1, 2023, Mr. O'Dierno emailed Ms. Matar promising to make the first payment the following day. Ex. CV-5 at 8.

5

23-11007-cgb  Doc#99  Filed 09/05/24  Entered 09/05/24 16:53:20  Main Document  Pg 6 of 22


c.  On February 2, 2023, Mr. O'Dierno emailed Ms. Matar two times stating that a payment would be made that day. Ex. CV-5 at 7.

d.  On February 26, 2023, Mr. O'Dierno emailed Ms. Matar a term sheet for the Debtor's proposed plan to repay its debts to CV (the "Payment Plan"). Ex. CV-5 at 4–5. In the Payment Plan, the Debtor acknowledged the validity of and agreed to pay or remedy, *inter alia*: (i) the $200,000 Emergency Payroll Loan; (ii) $323,927.43 of Unpaid Invoices; and (iii) termination of the Addendum and "all related breaches of contract and delayed repayment of the loan, including all interest through March 1, 2023." *Id.* The Payment Plan also included a representation by the Debtor that it would receive $1 million of funding on or about February 27, 2023. *Id.* ¶ 3.a.

e.  On March 4, 2023, Brian Grant, the Debtor's CFO, emailed Ms. Matar the following admission: "Yes, I understand we owe you a significant amount of money, including a bridge loan that is past due." Ex. CV-5 at 2.

f.  On March 16, 2023, Mr. O'Dierno emailed Ms. Matar a request for electronic payment instructions. Ex. CV-5 at 1.

14.  The Debtor represented to CV that it would soon receive $1 million of funding and promised to use those funds to pay CV in order to induce CV to accept the Payment Plan. Yet, the Debtor never made good on its promises to pay, which led CV to sue the Debtor in state court.

4861-2922-1089.4

D.    **Prepetition Litigation Against the Debtor**

15.    On April 13, 2023, CV filed a Complaint for Breach of Contract (the "Oregon Complaint") commenced a lawsuit (the "Oregon Lawsuit")[4] against the Debtor in Multnomah County Circuit Court (the "Oregon Court") seeking to recover $553,927.43 for unpaid amounts owing to CV in connection with the Unpaid Invoices, the Note, and the Consulting Fee. The Oregon Complaint, a true and correct copy of which is attached hereto as **Exhibit CV-6**, asserts three claims against the Debtor for breach of contract under the Client Service Agreement and the Note.

16.    On or around July 21, 2023, CV moved for summary judgment in the Oregon Lawsuit on each claim. On or around August 16, 2023, the Debtor filed its opposition to summary judgment in the Oregon Lawsuit. The Parties presented oral arguments to the Oregon Court on September 6, 2023. On October 3, 2023, the Oregon Court signed a scheduling order (the "Oregon Scheduling Order"): (i) directing the Parties to complete depositions and discovery in connection with CV's summary judgment motion by November 30, 2023;[5] (ii) granting the Debtor until December 11, 2023, to file declarations and other evidence; and (iii) granting CV ten days to file a reply. A true and correct copy of the Oregon Scheduling Order is attached hereto as **Exhibit CV-7**.

17.    On November 16, 2023, the Debtor tendered an offer under Oregon Rule of Civil Procedure 54 E to allow CV to take judgment against the Debtor in the amount of $200,000 to

---

[4] The Oregon Lawsuit is styled *Collaborative Vision, LLC, an Oregon limited liability company, Plaintiff v. Q5iD, Inc., an Oregon corporation, Defendant*, Case No. 23-CV-15182, and is pending in the Circuit Court for the State of Oregon, Multnomah County.

[5] The November 30, 2023, discovery deadline was predicated in part on the Debtor's request to subpoena approximately 10 former employees as custodians of documentary evidence to support their affirmative defenses. The Debtor ultimately subpoenaed zero custodians, indicating the request for extended discovery was merely a delay tactic.

resolve count 3 of the Oregon Complaint (the "Count 3 Settlement Offer"). A true and correct copy of the Count 3 Settlement Offer is attached hereto as **Exhibit CV-8**.

18.     On November 30, 2023, the same day as the discovery deadline under the Oregon Scheduling Order, the Petitioning Creditors commenced the involuntary bankruptcy (which converted to this Chapter 7 bankruptcy case) (this "Chapter 7 Case"). On December 12, 2023, the Debtor filed a notice of bankruptcy (the "Notice of Bankruptcy") with the Oregon Court, thus staying the Oregon Lawsuit. A true and correct copy of the Notice of Bankruptcy is attached hereto as **Exhibit CV-9**.

19.     Lacking a legal basis for breaching its contracts with CV, the Debtor's strategy in the Oregon Lawsuit was to engage in litigation tactics to try and suffocate CV under the weight of litigation expenses. For example, at summary judgment, the Debtor claimed all of its evidence was with witnesses, yet the Debtor failed to subpoena or depose a single witness, opting instead to depose only CV's representative, Ms. Matar, and threatening additional depositions to harass her. As a result of the Debtor's litigation tactics, CV incurred approximately $180,000 in attorneys' fees in the Oregon Lawsuit before the Oregon Court had a chance to rule on CV's summary judgment motion.

**E.     Relevant Background Regarding this Chapter 7 Case**

20.     On November 30, 2023, the Petitioning Creditors filed an Involuntary Petition Against a Non-Individual [Docket No. 1] (the "Involuntary Petition") against the Debtor.

21.     On July 23, 2024, this Court entered an order [Docket No. 60] denying the Debtor's motion to dismiss this Chapter 7 case.

22.     On July 24, 2024, this Court entered the Order for Relief [Docket No. 62] (the "Order for Relief"), thereby adjudicating the Debtor as a debtor under Chapter 7 of the Bankruptcy Code.

4861-2922-1089.4

23.     On July 29, 2024, the Debtor filed a motion for rehearing of the Order for Relief or a stay pending appeal [Docket No. 70] (the "Motion for Rehearing").

24.     On July 31, 2024, this Court entered an order setting a status conference on the Motion for Rehearing [Docket No. 74] (the "Status Conference Order") in which the Court noted, among other things, that "the Court believes the Debtor's position [in the Motion for Rehearing] is unlikely to prevail" because the Court already held an evidentiary trial on the merits of the involuntary petition, the Debtor lost that trial, and "an award of a second trial" is not what the Debtor gets for "laying behind the log." *See* Status Conference Order at 2, 11–12.

25.     On August 1, 2024, this Court held a status conference (the "Status Conference") on the Motion for Rehearing pursuant to the Status Conference Order.

26.     On August 8, 2024, this Court entered an order staying the Order for Relief (but not vacating the Order) and abating the hearing on the Motion for Rehearing pending its ruling on consensual dismissal of the Chapter 7 Case [Docket No. 83] (the "Stay Order"). Importantly, the Stay Order is expressly subject to the Court's statements on the record of the Status Conference, during which this Court stayed the Order for Relief pending consideration of a forthcoming motion to dismiss the involuntary petition without prejudice to other creditors such as CV. *See* Stay Order at 3a.; Tr. of Hr'g (Aug. 1, 2024), 11:3–14; 9:22–23.  The Court did not vacate the Order for Relief or dismiss the case. The Court stayed the Chapter 7 Trustee's statutory obligations but did not dismiss him or strip him of standing—in fact, the Court expressly preserved his standing. Tr. of Hr'g (Aug. 1, 2024), 17:22–25. A request to ***stay*** the Order for Relief, not vacate it, was before the Court, the Court stayed the Order for Relief and, in doing so, preserved the Chapter 7 Trustee's standing to protect the rights of creditors not party to the Involuntary Petition. Accordingly, this Chapter 7 Case remains a Chapter 7 Case,

4861-2922-1089.4

notwithstanding the Stay Order or the relief for dismissal sought by the Debtor and the Petitioning Creditors but not yet granted by this Court.

27.     On August 15, 2024, the Debtor and the Petitioning Creditors filed the Dismissal Motion.

**F.      CV's Proof of Claim is Forthcoming**

28.     As of the date hereof, CV has not filed a proof of claim in this Chapter 7 Case. Nonetheless, much of the supporting documentation to support the *prima facie* validity of CV's proof of claim is attached to this Objection, and CV intends to file a proof of claim in this Chapter 7 Case prior to the hearing on the Dismissal Motion.

<u>**Objection**</u>

**A.      Section 707(a) Provides the Appropriate Legal Standard for Dismissal of this Chapter 7 Case and the Debtor has Failed to Meet that Standard**

29.     Section 707 of the Bankruptcy Code governs dismissal of ***cases***, whereas section 303(j) governs dismissal of ***involuntary petitions***. This Court has already entered an Order for Relief. Therefore, the Debtor may only seek dismissal of the Chapter 7 Case under section 707(a). As this Court emphasized, the Debtor has already received a trial on the merits of the Involuntary Petition. Status Conference Order at 14. The Debtor lost, and now it must live with the consequences[6]— "the ship has sailed, the train has left the station[.]" *Id.*

30.     In arguing for dismissal under section 303(j)(2), the Debtor relies heavily on the case *In re Positron Corp.*, 556 B.R. 291 (Bankr. N.D. Tex. 2016), citing to it five times. Dismissal Mot. at 1 n. 1; 7 ¶ 18; and 8 ¶¶ 20, 22. The Debtor conveniently failed to mention that

---

[6] As this Court stated on the record, one of those consequences is that the Bankruptcy Code protects CV's rights. *See* Tr. of Hr'g, (Aug. 1, 2024), 20:9–13 ("You know, maybe it costs the Debtor a little bit but that's the difficulty of putting the genie back in the bottle. So again, I'm not trying to prejudice anything. . . .").

the *Positron* court had not yet entered an order for relief when the alleged debtor reached a settlement with the petitioning creditors, and Judge Jones found this detail to be very important:

> Of particular significance here is that the proposed settlement was reached during the trial on the involuntary petition. ***No order for relief has been entered.*** This case is still postured as a contested involuntary proceeding—it is a *pending lawsuit* on whether Positron should be adjudicated as a debtor under chapter 11 of the Bankruptcy Code.

*Positron Corp.*, 556 B.R. at 294 (emphasis original).

31.     Facts matter. Here, unlike in *Positron*, this Court has already entered the Order for Relief and adjudicated this Debtor to be a debtor under Chapter 7 of the Bankruptcy Code. The Stay Order ***preserved*** the status quo—it did not vacate or rescind the Order for Relief. Accordingly, section 707(a) provides the appropriate (and only) standard for dismissal of this Chapter 7 Case.

32.     The applicable legal standard is an important consideration for this Court because section 707(a) sets forth a more exacting standard than section 303(j)(2). Whereas both sections require notice and a hearing, section 707(a) adds another requirement, allowing dismissal "*only for cause.*" 11 U.S.C. § 707(a) (emphasis added). It is unsurprising, then, that the Debtor engaged in such a verbose soliloquy featuring citations to Justices Cardozo and Scalia in an attempt to try and jam its square request for 303(j)(2) dismissal into the round hole that is this Chapter 7 Case in which the Order for Relief has already been entered. The Debtor is simply attempting to distract the Court from the reality that it has failed to (and cannot) carry its burden of proving cause for dismissal under section 707(a).

33.     This Court has observed that "section 707(a) does not . . . provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition." *In re Privada, Inc.*, No. 07-10940 FRM, 2008 Bankr. LEXIS 2717, at *13 (Bankr. W.D. Tex. 2008) (citing *Patterson v. Atlas Supply Corp. (In the Matter of Atlas Supply Corp.)*,

857 F.2d 1061, 1063 (5th Cir. 1988)). The list of examples of cause are illustrative only. *Privada*, 2008 Bankr. LEXIS 2717, at *13 (citing *In re MacFarlane Webster Assoc.*, 121 B.R. 694, 696–97 (Bankr. S.D.N.Y. 1990)). Further, section 707(a) permits "***any*** party in interest to move the court for dismissal of the bankruptcy case on abuse constituting cause." *Id.* at 701 (emphasis added). In deciding whether to dismiss a case under section 707(a), the court may consider equitable principles, and the decision lies within the discretion of the bankruptcy judge. *Atlas Supply Corp.*, 857 F.2d at 1063.

34.     The Debtor gives relatively short shrift to cause for dismissal under 707(a) on grounds that: (i) the Debtor continues to pay its debts in the ordinary course, (ii) the Debtor does not need bankruptcy relief, (iii) dismissal would not prejudice creditors, and (iv) the Debtor has not been alleged to have engaged in any misconduct. Dismissal Mot. at 11 ¶¶ 28–30. Wrong:

a.    This Court made express findings that the Debtor failed to controvert the Petitioning Creditors' argument that it was not paying its debts with even a scintilla of evidence, and that failure is *exactly* why the Debtor lost its trial on the Involuntary Petition. *See generally* Status Conference Order. Further, this Objection is replete with documentary evidence showing that the Debtor has failed to pay its debts to CV in the ordinary course of business and containing admissions by the Debtor's representatives that those debts to CV ***are undisputed.*** *See* Ex. CV-5.

b.    The Debtor claims to not need bankruptcy relief, but the creditors in this case do need bankruptcy protections to preserve equality of distribution, and the creditors in this case likely extend beyond just the Petitioning Creditors and CV. For example, CV believes there is at least one other creditor not listed on the Debtor's certificate of

service for the Dismissal Motion.[7] Certificate of Service [Docket No. 89]. If there are other creditors that the Debtor has failed to disclose to this Court (regardless of its intent) or serve the Dismissal on, then the Debtor has violated this Court's Order. Stay Order at 2 ¶ 2 (". . . the Debtor shall identify all known creditors . . . and file, under penalty of perjury, a matrix identifying the creditors by name and last known address. The Debtor shall serve the Dismissal Motion . . . upon all creditors and interested parties . . . ."). The best interest of the estate (not just the Debtor and the Petitioning Creditors) demands that this Court retain jurisdiction over this bankruptcy case to ensure transparency, notice and equality of distribution to all creditors.

c. Dismissal of this Chapter 7 Case on the consent of only the Debtor and the Petitioning Creditors would absolutely prejudice the other creditors, including CV, and that is exactly why the Debtor, after losing its trial on the Involuntary Petition on the merits, suddenly decided to pay off the Petitioning Creditors in an attempt to get out from under the spotlight, scrutiny, liability and exposure that a bankruptcy case can bring. The *Positron* court emphasized that a petition for relief had not yet been entered when the Debtor reached a settlement with the petitioning creditors, and that this fact was "of particular importance," thereby suggesting that its ruling may have changed had a petition for relief been entered. This Chapter 7 Case is a prime example of why entry of a petition for relief matters: here, the Petition for Relief has already been entered, the Debtor is *in* bankruptcy, and if it wants out via dismissal, 303(j)(2) no longer applies—the Debtor must satisfy the higher standard of section 707(a).

---

[7] CV is currently assisting the Chapter 7 Trustee in locating the other creditors and obtaining confirmation that the Debtor's debts to them remain outstanding.

4861-2922-1089.4

d.  CV alleges that the Debtor has committed significant misconduct, including, without limitation: changing its name and moving assets to evade the reach of creditors' claims, omitting creditors from its mailing matrix after the Court ordered it to notice *all* creditors, and paying off the Petitioning Creditors to evade the broader interests and scrutiny of this Court, the Chapter 7 Trustee, the United States Trustee, and CV, among others. The Debtor asserts that the Oregon Court is the appropriate venue to litigate CV's claim. Dismissal Mot. At 11 n. 10. The Debtor was happy to avail itself of the benefits of bankruptcy (*i.e.*, the automatic stay) by filing the Notice of Bankruptcy attached at Ex. CV-9, but the Debtor is now fighting tooth and nail to avoid any of bankruptcy's attendant obligations and consequences, including transparency and honesty toward creditors. Has the Debtor, shielded by the automatic stay in the ten months between the Notice of Bankruptcy and today? Only a Chapter 7 Trustee operating with its full powers can ensure the integrity of the estate's assets in this Chapter 7 Case.

35.   The Debtor has failed to show cause for dismissal under 707(a). The Court should, therefore, deny the Dismissal Motion. If the Court grants the Dismissal Motion, CV will likely obtain a judgment against the Debtor in the Oregon Lawsuit, but then CV will have to burn more time and cash trying to pin the Debtor down. Further, nothing would prevent the Debtor from engaging in additional misconduct, such as changing its name and moving assets again, or filing a bad-faith bankruptcy case under Chapter 11 as a litigation tactic to further delay CV (and potentially others) from recovering on valid claims. Such an outcome could not be further from the best interests of this bankruptcy estate.

4861-2922-1089.4

**B.** **The Debtor's Arguments Also Fail Under Section 303(j)(2), Which Was Designed to Protect the Rights and Interests of Creditors Like CV from Unfair Settlement Dismissals Like the one Before the Court**

36.     Courts recognize that section 303(j)(2) permits dismissal of an involuntary case only "on consent of all petitioners and the debtor ***and before entry of an order for relief*** . . . after notice to all creditors and a hearing." *E.g., In re Savannah Yacht Corp.*, No. 03-41547, 2004 WL 6044671, at \*4 (Bankr. S.D. Ga. 2004) (emphasis added). Notwithstanding that an Order for Relief has already been entered in this Chapter 7 Case, the purpose of section 303(j) is "to avoid the filing of involuntary cases followed by collusive settlements between the petitioning creditors and the debtor . . . ." *Id.*; *see also In re Faberge Restaurant of Florida. Inc.*, 222 B.R. 385, 388 (Bankr. S.D. Fla. 1997) (holding involuntary Chapter 7 debtor's post-petition payment to one of creditors that had joined in filing involuntary petition did not render petition insufficient for lack of eligible creditors).

37.     Since the purpose of the Bankruptcy Code is to facilitate equal treatment to similar creditors, an involuntary petition cannot be dismissed solely upon the consent of the petitioners and the debtor unless the court finds that dismissal is in the best interest of ***all*** creditors. *See In re Warren*, 181 B.R. 136, 138 (Bankr. N.D. Ala. 1995) (holding proposed settlement did not treat similarly situated creditors equally and could not be approved); *In re Wayne's Sport Haus. Ltd.*, 27 B.R. 521, 522 (Bankr. E.D. Mich. 1983) (refusing to grant unopposed motion to dismiss where settlement provided that debtor's president would pay only petitioners).

38.     The *Positron* court expressly emphasized the protections that section 303(j)(2) provides to creditors of the estate other than the petitioning creditors. Specifically, the *Positron* ruling indicates that section 303(j)(2) dismissals cannot be approved over the objection of a creditor:

> "[T]he notice provisions of [what is now § 303(j)] were designed to prevent injurious settlements and to protect the estate for creditors other than those who brought the petition." *Wynne v. Rochelle*, 385 F.2d 789, 794 (5th Cir. 1967). "[I]t is the rights of those creditors not a party to the original proceeding that the section was intended to protect, and in whose interest it should be construed." *Id.* at 795 n.6. The legislative notes make it clear that "[t]he purpose of the subsection is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors [] that wish to see relief ordered with respect to the debtor but that did not participate in the case [] are left without sufficient protection." H.R. Rep. No. 95-595, at 324 (1977); S. Rep. No. 95-989 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6370.

*Positron*, 556 B.R. at 294.

39.     CV is the *exact* type of creditor that section 303(j) protects. As stated, CV has begun drafting a proof of claim that it intends to (and will) file before the hearing on the Dismissal Motion. CV's proof of claim establishes a creditor class that can be served in this Chapter 7 Case. Provided the Court denies the Dismissal Motion, the creditor class will likely expand once the Chapter 7 Trustee's powers are reinstated and he is allowed to notice *all* of the Debtor's creditors regarding the pendency of this Chapter 7 Case.

40.     Further, the Debtor's over-emphasis on the disputed or undisputed nature of creditors should have no bearing on the Court's consideration of the Dismissal Motion. Even creditors like CV whose claims are disputed have standing to object to requests for dismissal under section 303(j)(2). *E.g.*, *Savannah Yacht Corp.*, 2004 WL 6044671, at *4 ("[A] creditor can have standing to object to dismissal of an involuntary bankruptcy petition even though the creditor could not have joined in involuntary petition because its claim was subject to bona fide dispute."); *In re Taub*, 150 B.R. 96, 97–98 (Bankr. D. Conn. 1993) (holding that notice had to be given to all creditors, including non-petitioning creditors, before case could be dismissed); *In re Broshear*, 122 B.R. 705, 707 (Bankr. S.D. Ohio 1991) (granting motion to vacate order dismissing involuntary Chapter 7 case unless petitioning creditors rescinded or repaid sums they received from debtor).

16

41.     Courts holding that disputed creditors have standing to object to 303(j) dismissal point to the fact that when Congress enacted the Bankruptcy Amendments and Federal Judgeship Act in 1984, it expressly eliminated the ability of a creditor with a claim subject to bona fide dispute to be a petitioning creditor. *See Savannah Yacht Corp.*, 2004 WL 6044671, at *4 (citing 11 U.S.C. § 303(b)(1)). Congress made no corresponding change in section 303(j) regarding which creditors must receive notice of the proposed dismissal. *Id.* Since notice must be sent to all creditors, Congress intended that all creditors have standing to be heard on their objections to dismissal. *Id.* Thus, regardless of whether there is a bona fide dispute (there is not) between the Debtor in this Chapter 7 Case and CV concerning any debt owed by Debtor does not preclude CV from objecting to the Dismissal Motion.

## **Reservation of Rights**

42.     CV expressly reserves all rights with respect to this Objection. Nothing contained herein is intended or should be construed as a waiver or limitation of CV's rights under the Bankruptcy Code or any other applicable law.

## **Conclusion**

43.     WHEREFORE, for the reasons set forth in the Objection, CV requests that this Court enter an order (i) denying the Dismissal Motion, (ii) revoking the Stay Order and reinstating the Chapter 7 Trustee's powers, and (iii) granting such other relief as is appropriate.

4861-2922-1089.4

Dated: September 5, 2024.
    Austin, Texas

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Lynn Hamilton Butler*
Lynn Hamilton Butler (SBN 03527350)
lynn.butler@huschblackwell.com
HUSCH BLACKWELL LLP
111 Congress Ave, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 *facsimile*

-and-

Thomas J. Zavala (SBN 24116265)
tom.zavala@huschblackwell.com
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 *facsimile*

***Attorneys for Collaborative Vision LLC***

18

### Certificate of Service

I do hereby certify that on September 5, 2024, the undersigned counsel for CV served a true and correct copy of this Objection through the Court's CM/ECF system on all parties enlisted to receive service electronically, which includes Debtor's counsel, counsel for the Petitioning Creditors, the Chapter 7 Trustee, and the United States Trustee for the Western District of Texas, as set out on the list below.

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler

**ArtiusID, Inc.**
801 Barton Springs
Austin, TX 78704
Tax ID / EIN: 00-0000000
*Added: 11/30/2023*
*(Debtor)*

represented by

**Mark D. Bloom**
Baker McKenzie LLP
1111 Brickell Ave
Ste 10th Floor
Miami, FL 33131
305-789-8900
mark.bloom@bakermckenzie.com
*Assigned: 07/30/24*

**Alexander D. Burch**
Baker McKenzie LLP
700 Louisiana, Suite 3000
Houston, TX 77002
713-427-5038
713-427-5099 (fax)
alexander.burch@bakermckenzie.com
*Assigned: 07/29/24*

**Robert T DeMarco, III**
Robert Demarco
12770 Coit Road
Suite 850
Dallas, TX 75251
972-991-5591
robert@demarcomitchell.com
*Assigned: 03/30/24*

**Eric A Liepins**
Legal Aid of Northwest Texas
1515 Main Street
Dallas, TX 75201
214-243-2231
liepinse@lanwt.org
*Assigned: 12/19/23*

4861-2922-1089.4

**Collaborative Vision, LLC**
c/o Kell C. Mercer, PC
901 S Mopac Expy Bldg 1 Ste 300
Austin, TX 78746
(512) 767-3214
kell.mercer@mercer-law-pc.com
*Added: 01/07/2024*
*(Creditor)*

represented by

**Lynn Hamilton Butler**
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 479-9758
(512) 226-7318 (fax)
lynn.butler@huschblackwell.com
*Assigned: 08/21/24*

**Kell C. Mercer**
Kell C. Mercer, P.C.
901 S MoPac Expy, Bldg 1, Suite 300
Austin, TX 78746
512-627-3512
512-597-0767 (fax)
kell.mercer@mercer-law-pc.com
*Assigned: 01/07/24*

**Goldstein Consulting Services, LLC**
4445 Post Road, Apt. 5D
New York, NY 10471
*Added: 11/30/2023*
*(Petitioning Creditor)*

represented by

**Jason Bradley Binford**
Ross, Smith & Binford, PC
2901 Via Fortuna
Bldg. 6
Suite 450
Austin, TX 78746
512-351-4778
214-377-9409 (fax)
jason.binford@rsbfirm.com
*Assigned: 11/30/23*

**Michael Conway**
Lazare Potter Giacovas & Moyle LLP
747 Third Ave., 16th Floor
New York, NY 10017
917-242-1597
mconway@lpgmlaw.com
*Assigned: 01/23/24*

**Ana Pia D. Felix**
Lazare Potter Giacovas Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017
212-758-9300
afelix@lpgmlaw.com
*Assigned: 02/07/24*

**Rearc LLC**
1216 Broadway, Suite 218
New York, NY 10001
*Added: 11/30/2023*
*(Petitioning Creditor)*

represented by

**Jason Bradley Binford**
Ross, Smith & Binford, PC
2901 Via Fortuna
Bldg. 6
Suite 450
Austin, TX 78746
512-351-4778
214-377-9409 (fax)
jason.binford@rsbfirm.com
*Assigned: 11/30/23*

**Michael Conway**
Lazare Potter Giacovas & Moyle LLP
747 Third Ave., 16th Floor
New York, NY 10017
917-242-1597
mconway@lpgmlaw.com
*Assigned: 01/23/24*

**Ana Pia D. Felix**
Lazare Potter Giacovas Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017
212-758-9300
afelix@lpgmlaw.com
*Assigned: 02/07/24*

**Ron Satija**
P.O. Box 660208
Austin, TX 78766
512-733-1311
512-733-1311 (fax)
rsatija@haywardfirm.com
*Added: 07/25/2024*
*(Trustee)*

represented by

**Todd Brice Headden**
Hayward PLLC
7600 Burnet Road
Suite 530
Austin, TX 78757
737-881-7104
theadden@haywardfirm.com
*Assigned: 08/14/24*

**Ron Satija**
Hayward PLLC
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7102
(972) 755-7100 (fax)
rsatija@haywardfirm.com
*Assigned: 08/22/24*

4861-2922-1089.4

**United States Trustee - AU12**
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701
(512) 916-5330
ustpregion07.au.ecf@usdoj.gov
*Added: 11/30/2023*
*(U.S. Trustee)*

**Xmogrify, LLC**
23 Arden Drive
Hartsdale, NY 10503
*Added: 11/30/2023*
*(Petitioning Creditor)*

represented by

**Jason Bradley Binford**
Ross, Smith & Binford, PC
2901 Via Fortuna
Bldg. 6
Suite 450
Austin, TX 78746
512-351-4778
214-377-9409 (fax)
jason.binford@rsbfirm.com
*Assigned: 11/30/23*

**Michael Conway**
Lazare Potter Giacovas & Moyle LLP
747 Third Ave., 16th Floor
New York, NY 10017
917-242-1597
mconway@lpgmlaw.com
*Assigned: 01/23/24*

**Ana Pia D. Felix**
Lazare Potter Giacovas Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017
212-758-9300
afelix@lpgmlaw.com
*Assigned: 02/07/24*

4861-2922-1089.4