## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-11007-cgb |
| | § | |
| **ARTIUSID, INC.,** | § | **Chapter 7** |
| | § | |
| Alleged Debtor. | § | |

### OMNIBUS REPLY IN SUPPORT OF CONSENT STIPULATION AND MOTION FOR DISMISSAL OF INVOLUNTARY PETITION UNDER CHAPTER 7

Alleged Debtor, artius.iD, Inc. ("**Artius**"), by and through undersigned counsel and pursuant to Local Rule 7007(c) and this Court's *Order Granting Motion for Enlargement of Time to File Omnibus Reply to Objections to Dismissal Motion* [Doc. No. 103], hereby files this Omnibus Reply in Support of its *Consent Stipulation and Motion for Dismissal of Involuntary Petition Under Chapter 7* [Doc. No. 88] (the "**Dismissal Motion**"), replying to *Collaborative Vision LLC's Objection to Consent Stipulation and Motion for Dismissal of Involuntary Petition Under Chapter 7* [Doc. No. 99] (the "**Collaborative Vision Objection**"), *Objection to Consent Stipulation and Motion for Dismissal of Involuntary Petition Under Chapter 7* [Doc. No. 100] (the "**US Trustee Objection**"), and *Trustee's Response to Motion to Dismiss* [Doc. No. 101] (the "**Satija Objection**"),[1] and relies upon the following facts and substantial matters of law.

### I.    Introductory Statement

1.    The Dismissal Motion arises out of the proceedings before the Court leading up to and through the Status Conference held on August 1, 2024, that led directly to the entry of the Stay Order on August 8, 2024. [Doc. No. 83]. Pursuant to that Stay Order, Artius filed the Dismissal

---

[1] The three Objections are referred to collectively herein as the "**Objections.**" Other capitalized terms used and not defined herein are intended to have the meaning set forth in the Dismissal Motion.

Motion on August 15, 2024 [Doc. No. 88], to which responses and objections were due on September 5, 2024.

2.       Following the timely filing of the three Objections, the Court convened a further Status Conference on September 10, 2024, at which it expressed the view that based upon its entry of the Order for Relief [Doc. No. 62] and notwithstanding the entry of the Stay Order, the proper statutory basis on which to address the Dismissal Motion was section 707 of the Code and not section 303(j). At the conclusion of the hearing, the Court left the Stay Order in place.[2]

3.       As directed in the Stay Order, the Dismissal Motion seeks dismissal in the alternative under sections 303(j) and 707. This Reply proceeds in the same manner, and offers factual support and legal argument for dismissal on each of these bases. In addressing both of those statutory schemes, Artius means no disrespect to the Court, but seeks to preserve its position with respect to each of those sections as the Court may determine to be applicable upon full consideration of the Dismissal Motion, Objections, this Omnibus Reply, and the evidence to be presented at the hearing scheduled by the Court for September 25, 2024.

4.       Accordingly, this Omnibus Reply will address first the legal status of the case and applicable standard for dismissal, then the legal bases for dismissal under each of sections 303(j) and 707(a), and then finally each of the Objections individually.

**II.       Legal Status of the Case and Applicable Standard for Dismissal**

5.       While each of the Objections and, respectfully, the Court at the September 10 Status Conference, questioned or differed with undersigned counsel on the legal effect of the Stay Order,

---

[2] Mindful of the proceedings at the September 10 Status Conference and the terms of the Stay Order, undersigned counsel reiterates that there was no attempt whatsoever to mislead counsel for other parties in interest—nor certainly the Court—in presenting the Stay Order of which multiple drafts had been circulated, discussed with and approved by counsel for the Petitioning Creditors, US Trustee and Trustee. From inception, each draft contained the provision that the Order for Relief was "STAYED IN ALL RESPECTS." (emphasis in original).

Artius rests on the controlling legal principles articulated by the United States Supreme Court and Fifth Circuit Court of Appeals in the series of cases cited at pp. 5 and 6 of the Dismissal Motion. To reiterate, that effect is that the entry of a stay restores the parties and case to the status quo as existed prior to the entry of the order that is the subject of the stay; that is to say, the stay order is not vacated nor rescinded, but its effect is suspended and the legal rights of the parties as existed prior to its entry remain in effect.

6.      This principle is perhaps best illustrated by the two election cases from the Fifth Circuit, as cited in the Dismissal Motion.[3] In each of those cases, injunctions entered by district courts on the eve of elections were stayed by the appellate court pending appeal, *and the elections were directed to proceed as if the injunctions never had been entered*. Tellingly, while all of the Objections would ignore the legal effect of the stay as established by these controlling cases, none of the Objections offer any explanation of why those cases do not control the situation here.

7.      There is no dispute that during the period prior to entry of the Order for Relief this case was in what is known as the "involuntary gap period," that period covered by section 303(f) of the Bankruptcy Code during which "any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. §303(f). As a condition of the Stay Order, Artius accepted, and the Court imposed, additional restrictions on the operation of its business, including a prohibition against any transfers out of the ordinary course of business and requirements of periodic financial reporting. Stay Order at ¶3(a), ¶4(a) and ¶4(b). Artius has complied strictly, fully and completely with each and every one of those requirements, and notwithstanding the effort in

---

[3] *Tex. All. v. Hughes*, 976 F.3d 564, 565 (5th Cir. 2020); *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014).

the Collaborative Vision Objection to portray it as a "bad actor,"[4] comes before this Court with clean hands in seeking dismissal under each of the two alternative bases below.[5]

8.      Based on the foregoing, Artius proceeds from the position that the effect of the Stay Order that stayed the Order for Relief "IN ALL RESPECTS" is to return it to the position of an alleged debtor operating within the section 303(f) involuntary gap period, subject to those additional restrictions contained in the Stay Order and referenced above.[6] In that context, Artius respectfully submits that the applicable provision of the Bankruptcy Code that governs the Dismissal Motion is section 303(j)(2), which applies to a dismissal of an involuntary petition "on consent of all petitioners and the debtor." 11 U.S.C. §303(j)(2). As confirmed by their counsel at the Status Conference, Artius and the Petitioning Creditors stand by their settlement as reached and announced on the record at the August 1 Status Conference, and remain prepared and committed to consummate that settlement upon entry of a final order dismissing this involuntary case.

### III.   <u>Dismissal Under Section 303(j)</u>

9.      Recognizing that the Collaborative Vision and Satija Objections contend that the statutory basis for dismissal is section 707 and not section 303(j), Artius nevertheless finds it

---

[4] Collaborative Vision Objection at 1. As described more fully in section V below, Artius intends to establish at trial that much of what is set forth in the Collaborative Vision is false, in some instances intentionally and deliberately so; that it has attempted to pay and remains ready, willing and able to pay the $200,000 due and owing on Collaborative Vision's promissory note claim; and that the remainder of the Collaborative Vision claims are subject to a substantial bona fide dispute as to validity and amount that is properly left to be resolved in the Oregon state court in which Collaborative Vision elected to assert its claims in the first instance.

[5] As directed by the Court at the September 10 Status Conference, undersigned counsel has made and will continue to make efforts to produce such further documents and information as reasonably requested by the US Trustee and Mr. Satija, so as to address the Court's comment that any failure to do so will be taken into consideration at the trial on the Dismissal Motion.

[6] The suggestion in the *Positron* case that the result might have been different had an order for relief been entered is inapposite here because the Order for Relief is subject to the Stay Order and accordingly has no present legal effect.

curious that neither of those Objections articulates the legal standard by which objections to dismissal under section 303(j) are evaluated. According to the legislative history:

> Under subsection (j), the court may dismiss the consent only after giving notice to all creditors. *The purpose of the subsection is to prevent collusive settlements among the debtor and petitioning creditors while other creditors, that wish to see relief ordered with respect to the debtor but that did not participate in the case, are left without sufficient protection.*

S. Rep. No. 95-989, at 35, (1978) (emphasis added). The US Trustee agrees in its Objection that this legislative history sets forth the governing legal standard. US Trustee Objection at 2.

10. As counsel for the Petitioning Creditors assured the Court at the September 10 Status Conference, there is nothing collusive about the settlement that gives rise to the Dismissal Motion. The Court will recall that the settlement was reached only through the indulgence of a brief recess at the start of the August 1 Status Conference, and then announced on the record at that Status Conference as the basis for the Stay Order. *Most importantly in terms of the Artius' good faith, the Court should observe that after months of hard-fought litigation in the New York courts and in this involuntary case, once this Court determined that the claims of the Petitioning Creditors were not subject to a bona fide dispute, Artius moved swiftly and purposefully—less than one week after its motion to dismiss the involuntary petition under section 303(b) was denied—to negotiate a full and complete settlement that was funded immediately into the trust account of Petitioning Creditors' New York counsel.*

11. The effect of that settlement, together with the ongoing payments in the ordinary course to Artius' 40-odd other creditors listed on exhibits to the Marcotte Declaration [Doc. No. 71], is to leave only one creditor, Collaborative Vision, unpaid. As shown in section V below, all but the promissory note claim asserted by Collaborative Vision are the subject of a bona fide dispute, and the interests of Collaborative Vision are sufficiently protected upon dismissal of this

case by the termination of the automatic stay that would permit it to return immediately to the Oregon state court and pursue its claims in that forum.

12.     None of the Objections suggest, much less establish, that the settlement between Artius and the Petitioning Creditors is in any way collusive, nor do they contend that the interests of Collaborative Vision[7] or any other creditor are not sufficiently protected by dismissal.[8] Accordingly, Artius respectfully submits that to the extent the Court accepts its position that the Dismissal Motion is governed by section 303(j) of the Bankruptcy Code, the requirement of notice to all creditors as identified in the Marcotte Declaration has been satisfied; the settlement with the Petitioning Creditors upon which the requested dismissal is based is not collusive; and the interests of all creditors including Collaborative Vision in respect of its disputed pre-petition claims and Mr. Satija in respect of his claim for any fees and expenses are sufficiently protected.

13.     On the foregoing basis, Artius respectfully submits that dismissal of this involuntary case is proper under section 303(j) of the Bankruptcy Code.

### IV.     Dismissal Under Section 707(a)

14.     In the alternative, and without prejudice to its position as above that dismissal of this involuntary case is governed by section 303(j), Artius also submits that dismissal is proper "for cause" under section 707(a).[9]

---

[7] To the contrary, what emerges from the Collaborative Vision Objection is the perception of a strategic advantage to keep Artius in this Court, rather than return to Oregon where its third state court counsel withdrew (during the period while the automatic stay was in effect), several months after the principal of Collaborative Vision twice attempted to evade her deposition and ultimately was ordered to appear in person by the Oregon court.

[8] The Court should note that the form of proposed Order submitted and uploaded with the Dismissal Motion contains an express reservation of jurisdiction for the Court to allow, award and direct payment of reasonable fees and expenses incurred by Mr. Satija in his limited role as Chapter 7 Trustee, such that his rights in respect of such fees and expenses are sufficiently protected upon dismissal as well.

[9] As explained in the Dismissal Motion, subsections (b) and (c) apply only to the case of an "individual debtor" and accordingly are inapplicable here.

15. A recent decision affirming dismissal of an involuntary chapter 7 case under section 707(a) summarizes the standard for dismissal "for cause":

> Section 707(a) does not define 'cause,' but gives three example grounds for dismissal that are illustrative, not exclusive. Accordingly, the Bankruptcy Court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause. In resolving motions to dismiss under section 707(a), courts must engage in case-by-case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal. In each case, courts in this Circuit determine whether cause exists by looking at whether dismissal would be in the best interest of all parties.

*In re Valuex Rsch., LLC*, No. 3:23-cv-01267 (JCH), 2024 U.S. Dist LEXIS 165095, at *15 (D. Conn. Sept. 13, 2024) (cleaned up).

16. Under this standard, an involuntary chapter 7 case may be dismissed "for cause" as an inappropriate use of the bankruptcy system or Bankruptcy Code. *Id.* at *21. Courts have analyzed the following non-exclusive nine factors to identify whether an involuntary case is an inappropriate use of the bankruptcy system:

> (1) the bankruptcy court was the most recent battlefield in a long-running, two-party dispute; (2) the creditor brought the case solely to enforce a judgment; (3) there were no competing creditors; (4) there was no need for pari passu distribution; (5) assuming there were fraudulent transfers to be avoided, the creditor could do so in another forum; (6) the creditor had adequate remedies to enforce its judgment under non-bankruptcy law; (7) the creditor invoked the bankruptcy laws solely to secure a benefit—the ability to execute on both the debtor and his wife's interests in their apartment under 11 U.S.C. § 363(h)—that it does not have under non-bankruptcy law and without a creditor community to protect; (8) no assets would be lost or dissipated in the event that the bankruptcy case did not continue; and (9) the debtor did not want or need a bankruptcy discharge.

*Id.* at *21-22 (quoting *In re Murray*, 900 F.3d 53, 57-58 (2d Cir. 2018)) (cleaned up).

17. Among these nine factors, those that are applicable here weigh unanimously in favor of dismissal. As more fully discussed in opposition to the Collaborative Vision Objection in

section V below, other than the promissory note claim on which Artius made an offer of judgment in the Oregon state court litigation as more fully explained below, all of its claims present this court with the classic example of a two-party dispute. Collaborative Vision's right to an adjudication of that dispute is preserved in the state court litigation it initiated, and should it prevail in that adjudication, Collaborative Vision has access to the remedies available in its chosen forum. Collaborative Vision seeks to block the dismissal of this case and invoke the collective remedies of the Bankruptcy Code not in the interests of a community of creditors, but simply to exert leverage on Artius in that long-running two-party dispute. Factor No. 1.

18.     Moreover, as Artius has fully funded its settlement with the Petitioning Creditors and is paying all of its undisputed debts as they become due, there are no creditors competing with Collaborative Vision for any alleged past due payments and accordingly no need for pari passu distribution. Factors No. 3, 4. No assets would be lost or dissipated in the event this bankruptcy case did not continue. Factor No. 8. Artius remains prepared to litigate the contested Collaborative Vision claims in Oregon and, as with the claims of the Petitioning Creditors, to pay or settle those claims if the Oregon court rules upholds them, and accordingly neither wants nor needs any discharge of indebtedness in bankruptcy. Factor No. 9.

19.     Thus, "cause" exists to dismiss this involuntary bankruptcy case. Notice of the Dismissal Motion has been served on all Artius' pre-petition date creditors, and of these creditors only Collaborative Vision has objected. None of Artius' other creditors have objected, and in fact all of those other creditors have been or are being paid in the ordinary course. As it currently stands this case is simply a two-party dispute between Artius and Collaborative Vision.

20.     Underscoring the importance of dismissing an involuntary bankruptcy case where "cause" exists to do so, courts have recognized repeatedly that forcing a debtor into an inappropriate bankruptcy case causes irreparable harm. *Autobar Sys. of N.J. v. Berg Co., LLC*, No.

23-2541, 2024 U.S. App. LEXIS 20943, at *3 (3d Cir. Aug. 17, 2024) (threat of bankruptcy is irreparable harm under four part test for a stay or injunctive relief) (citing *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)). Retaining this case in bankruptcy would serve only to inflict irreparable harm on Artius—as well as its 19 employees and their families whose livelihoods and health insurance depend on its continuing operations—and bring the Collaborative Vision debt collection litigation before this court where the case law makes clear it simply does not belong.

21.     As aptly summarized by the bankruptcy court decision in *Valuex Research* that was affirmed by the district court as described above, the Bankruptcy Code is not a "substitute for customary state-court collection procedures," nor does the bankruptcy court exist to serve "as a rented battlefield or collection agency." *In re Valuex Rsch., LLC*, 2023 Bankr. LEXIS 2241 at *28. Collaborative Vision resorted to "customary state-court collection procedures" by filing its lawsuit against Artius in the Oregon state court, and as Artius satisfied all of the relevant factors for dismissal of this case under section 707(a) it is to that chosen forum that the two-party dispute between those parties should return.

## V.     The Collaborative Vision Objection

22.     Rather than address the statutory tests for dismissal under sections 303(j) and 707 of the Bankruptcy Code as set forth in the preceding sections, Collaborative Vision undertakes in its Objection to prove up the validity of the claims it asserts against Artius, prefaced by the admonition that Artius is "a bad actor." Respectfully, for whatever strategic advantage Collaborative Vision may seek to gain as the only pre-petition creditor to object to the Dismissal

Motion, the bankruptcy court is not the proper forum to resolve this two-party dispute[10] that has been pending in the Oregon state court since April of 2023.[11]

23.    Artius has reached a fully-funded settlement with its Petitioning Creditors, notice of the Dismissal Motion has been duly served upon the 40 or more creditors to which it has incurred (and paid in the ordinary course) obligations since the November 30 petition date, and Collaborative Vision stands as the lone pre-petition creditor advancing an objection to dismissal.[12] As the Second Circuit Court of Appeals noted in *Murray*, it is an "[i]nappropriate use of the Bankruptcy Code" for a single creditor—in that case, even a judgment creditor—to use involuntary bankruptcy as a debt collection tool. *See Murray*, 900 F.3d at 60. Affirming the bankruptcy court's dismissal of the involuntary case for "cause" under section 707(a), the Second Circuit noted in *Murray* that "the bankruptcy court was the most recent battlefield in a long-running, two-party dispute." *Id.* at 57-58.[13]

24.    It is a well-established principle of bankruptcy law that a two-party dispute is not a valid basis on which to commence—or in this case, maintain—an involuntary bankruptcy case in the bankruptcy court. *In re LFH Food Hall Operating, LLC*, No. 22-22041 (SHL), 2022 Bankr.

---

[10] Collaborative Vision appears to admit as much, stating in its *Emergency Motion for Protective Order and to Quash Debtor's Notices of Deposition,* Doc. No. 106, that "At the Court's September 9, 2024, status conference, the Court stated that its focus would be on the Dismissal Motion and not the Artius' dispute regarding Collaborative Vision's Claim, at the September 25, 2024 hearing." Motion to Quash at ¶18. That Motion raised multiple objections to various categories set forth in the deposition notice on the basis that those categories "focus on the nature of Collaborative Vision's Claim and not the issues raised by the Dismissal Motion." *Id.* at ¶¶18-25. The Court's grant of that Motion by minute entry dated September 17, 2024 deprives Artius of the ability to test the validity of the Collaborative Vision claim at the September 25 hearing, would appear to confirm that the facts alleged to support that claim are not properly before this Court and, to the extent advanced in the Collaborative Vision Objection, cannot be relied upon in addressing the Dismissal Motion.

[11] While Collaborative Vision may complain about the delays in the Oregon court imposed by the automatic stay, Collaborative Vision Objection at page 14, ¶ 34(d), it is the Petitioning Creditors and not Artius that invoked the stay by filing the involuntary petition on November 30, 2023. At any point in time since then Collaborative Vision could have sought relief from the stay to prove up the validity and amount of its claims in the Oregon court.

[12] The separate Objections filed by the Trustee and US Trustee are addressed in sections VI and VII that follow.

[13] The *Murray* court cited a total of 9 factors employed by the bankruptcy court to support dismissal under section 707(a).

LEXIS 2607, at *15-17 (Bankr. S.D.N.Y. 2022) (dismissal of involuntary chapter 7 case appropriate under section 707(a) because, in part, case was a long-running two-party dispute between the creditor and alleged debtor and was already pending in a state court); *In re Korean Radio Broad., Inc.*, No. 19-46322-ess, 2020 Bankr. LEXIS 1170, at *22-23 (Bankr. E.D.N.Y. Mar. 31, 2020) (same). This must be particularly so where even if all of the claims of the objecting creditor were undisputed, the alleged debtor has more than 12 creditors such that an involuntary case only could be sustained by three or more creditors under section 303(b)(1) of the Bankruptcy Code.

25.     The long-running dispute between Artius and Collaborative Vision traces back to the commencement of the Oregon litigation in April of 2023, and involves a dispute as to two of the three categories of claims asserted by Collaborative Vision. Artius admits the validity of, and its legal obligation on, the promissory note claim as described in the Collaborative Vision Objection, and attempted to pay that claim by way of an Offer of Judgment in the Oregon litigation back in November 16, 2023—two weeks before the Petitioning Creditors commenced this involuntary case.[14] Notwithstanding the expiration of that Offer under Oregon law, Artius stands ready, willing and able to pay the full amount due and owing on the Collaborative Vision promissory note claim as a condition to dismissal of this involuntary case.

26.     The balance of the Collaborative Vision claims arising from a series of contested invoices and the submission of an unauthorized expense report for travel and lodging for Ms. Matar and a companion to a convention in Las Vegas that she had attended at the expense of Collaborative Vision in prior years remains subject to dispute. The elements of that dispute are

---

[14] A true and correct copy of the Offer to Allow Judgment on Count Three of the Collaborative Vision complaint in the Oregon state court action that was served by Artius under Oregon Rule of Civil Procedure 54 E(1) and allowed by Collaborative Vision to expire without response is attached hereto as **Exhibit "A."**

more fully described in the draft Amended Answer and Affirmative Defenses that Artius intends to file in the Oregon state court upon dismissal of this involuntary case.[15]

27.     While Artius maintains its position that, respectfully, this is not the proper court in which to litigate the validity and amount of the disputed Collaborative Vision claim and Collaborative Vision appears to agree,[16] it is appropriate for this Court to understand the multiple bases for that dispute that include the following:

- Exerting influence arising from her long-standing personal and professional relationship with Larson, CEO of the company when it formerly was known as Q5id with whom she had worked before at a company called SureID, the principal of Collaborative Vision Lisa Matar presented and foisted on Artius, then known as Q5id, a series of candidates whom she knew to be unqualified for the positions for which they were offered, leading to a high level of turnover that created more opportunities for Collaborative Vision to present a continuous flow of new candidates and generate additional commissions for their placement.

- In order to lock in this improperly enhanced stream of income, Ms. Matar used her influence first to displace or neutralize the in-house recruitment department at Q5id, and later to negotiate an unorthodox arrangement under which Collaborative Vision became its exclusive outside recruitment agency, breaking that exclusivity only to accommodate the engagement of another agency that happened to operate from the same business address and small office as Collaborative Vision.

---

[15] A true and correct copy of the draft Amended Answer and Affirmative Defenses is attached hereto as **Exhibit "B."**

[16] *See* supra note 10, at 10.

- Throughout the business relationship, Collaborative Vision repeatedly used and abused its influence, even inducing Q5id to hire not one but two of her candidates as Vice Presidents of Sales when only one arguably was required as the company was in start-up mode and had no sales at the time.

- The list of unqualified candidates submitted by Collaborative Vision and hired by Artius on her strong recommendation included *Ms. Matar's own daughter,* who was presented and hired under a different last name without disclosure of the family relationship. This employee was terminated in her first week on the job—but not before she boasted repeatedly to other employees about Ms. Matar's personal relationship with Larson, CEO of the company when it formerly was known as Q5id, and how much time the two of them spent at Ms. Matar's home.[17]

- Throughout the business relationship, Ms. Matar would insert herself into the internal affairs of the company, seeking and using inside information to enhance her ability to present candidates and earn additional commissions, even to the point of embellishing or fabricating the qualifications of her candidates by copying and pasting internal job descriptions and desired qualifications into their resumes and applications.[18]

---

[17] Mr. Larson enabled Collaborative Vision's manipulation of its business relationship with the company, texting Ms. Matar in late 2022, "I would take care of you. I always have and I'm sure [I] always w[i]ll." As part of that effort, the evidence that would be introduced at trial in the Oregon litigation will include Mr. Larson's intimidation and direction to employees at the company to send the emails that were attached to the Collaborative Vision Objection.

[18] Artius has attempted on three occasions, most recently through the deposition notice quashed by this Court, to test and develop these defenses through a deposition of Ms. Matar as representative of Collaborative Vision in her home city of Portland, Oregon. Despite an order to appear from the Oregon court, Ms. Matar has yet to appear for any deposition to be questioned under oath.

- Ms. Matar would regularly promote candidates for positions already filled at the company, and cause existing employees to be terminated and replaced by her candidates so as to generate additional placement fees for Collaborative Vision.

28. Of course, the Collaborative Vision Objection paints a one-sided picture of the business relationship and its principal has avoided deposition on these topics for almost a year on three separate occasions. Instead, Collaborative Vision seeks to prejudice the Court by falsely presenting Artius as a "bad actor"—even making the knowingly and demonstrably false accusation that Artius' change of name and corporate residence from Oregon to Washington and Texas was undertaken for the purpose of evading its claims. Collaborative Vision Objection at page 1, ¶ 1 and page 14, ¶ 34(d). Offered for no other purpose than to inflame the Court, this allegation conveniently ignores that at the time of its relocation Artius issued a global press release,[19] picked up widely in industry and Oregon local media,[20] that set forth the valid reasons for its corporate move:

> "Our co-HQ location decision is a major component of our quantum-level growth strategy. Austin and Bellevue are thriving enterprise class business/technology and infrastructure hubs. Both locations have thriving employment bases of the best engineering talent, locations of key business partners, tax and business friendly

---

[19] A true and correct copy of the press release issued by Artius on May 11, 2023 can be found at the following link: https://www.prweb.com/releases/Q5iD_Announces_New_Corporate_Co_Headquarters_in_Austin_Texas_and_Bellevue_Washington/prweb19332927.htm. The press release was issued globally and obtained well-documented media coverage globally and nationally and at state and local levels including in Oregon.

[20] Even the most basic internet search conducted as part of "an inquiry reasonable under the circumstances" to determine whether "the allegations and other factual contentions have evidentiary support" as required under Bankruptcy Rule 9011(b)(3) would have revealed the well-publicized reasons for Artius' corporate relocation. *See e.g.* Jonathan Bach, *Portland software company to call Austin home soon,* AUSTIN BUS. J., May 12, 2023, https://www.bizjournals.com/austin/news/2023/05/15/q5id-relocates-hq.html; *Q5iD Announces New Corporate Co-Headquarters in Bellevue, Austin*, THE REGISTRY, May 16, 2023, https://news.theregistryps.com/q5id-announces-new-corporate-co-headquarters-in-bellevue-austin/; Mike Rogoway, *Oregon cybersecurity startup moves HQ to Texas, Washington*, OREGON LIVE, May 15, 2023, https://www.oregonlive.com/silicon-forest/2023/05/oregon-cybersecurity-startup-moves-hq-to-texas-washington.html; Ashley Bowdin, *Q5iD Opens Co-HQ, 8fig Gets $140M, and More Austin Tech News*, AUSTIN BUILT IN, May 15, 2023, https://www.builtinaustin.com/articles/austin-tech-news-051523; Mike Rogoway, *Oregon cybersecurity startup moves HQ to Texas, Washington*, THE BULLETIN, May 16, 2023 updated June 19, 2024, https://www.bendbulletin.com/business/oregon-cybersecurity-startup-moves-hq-to-texas-washington/article_542b8172-f34f-11ed-9c31-235e9a1ccec2.html; Paul Bubny, *Cybersecurity Firm to Open Dual Headquarters in Bellevue and Austin*, CONNECTCRE, May 16, 2023 https://www.connectcre.com/stories/cybersecurity-firm-to-open-dual-headquarters-in-bellevue-and-austin/.

environments, and top quality of life," said Q5iD President of the Board of Directors and Chief Executive Officer, Michael F. Marcotte.

29.     Collaborative Vision is hardly confused or simply mistaken in misrepresenting the reasons for the company relocation. To the contrary, Ms. Matar personally attended a meeting of some shareholders of the company conducted virtually on June 9, 2023 at which the valid reasons and business justifications for the relocation—including the better market for qualified technical candidates in Austin and in Bellevue, Washington than in Portland—were explained and discussed. Surely Ms. Matar was aggrieved by that particular reason for the relocation, as coupled with Mr. Larson's termination from the company one month earlier in April of 2023[21] it signaled the end of the era in which she could exert undue influence over the recruitment of personnel at Artius and churn the commissions earned from Collaborative Vision's exclusive arrangement with the company.

30.     Once again, it is not the purpose or intent of Artius to litigate these significant disputes before this Court, especially in the context of the Dismissal Motion. It is important, however, for this Court to understand the history—that while Ms. Matar now has managed to avoid the taking of her deposition under oath in two separate forums on three separate occasions, Artius has attempted to pay the undisputed promissory note claim while preserving its multiple defenses to the balance of the Collaborative Vision claims over which substantial questions of disputed fact exist. The two-party dispute that has simmered between the parties for some 18 months or more is properly litigated in the Oregon state court in which Collaborative Vision initially elected to bring that lawsuit, and its rights are fully and sufficiently protected by dismissal of this involuntary case and return to that chosen forum.

---

[21] The evidence to be introduced in the Oregon litigation also would show that Mr. Larson was placed on unpaid administrative leave pending the completion of a human resources investigation in February of 2023, and upon completion of that investigation his employment was terminated for cause on or about 10 April 2023.

## VI. <u>The Satija Objection</u>

31.     The gravamen of the Satija Objection is that dismissal does not serve the interests of creditors. As addressed above, this objection fails because there is no community of creditors that requires the collective remedies of the Bankruptcy Code. *See* Omnibus Reply, *supra*, ¶ 17.

32.     As noted above, the Dismissal Motion has been widely noticed to all of the creditors to which the company owed debts on and since the Petition Date as certified by the Marcotte Declaration. The only pre-petition creditor to come forward is Collaborative Vision and the only post-petition creditor to step forward is the Chapter 7 Trustee and his law firm that he seeks to retain as proposed counsel.[22] Although Mr. Satija suggests there are other unpaid creditors, this suggestion is unspecific, unsupported and, in the face of the wide notice of the Dismissal Motion and lack of protest from other creditors, appears to be nothing more than unfounded speculation.[23]

33.     The absence of objections to the Dismissal Motion from any other creditors signals that their interests weigh in favor of dismissal, so that those that continue to do business with Artius can continue to be paid in the ordinary course. Mr. Satija's argument that the Petitioning Creditors were unpaid is old history and misleading; within days after this Court determined that their claims were not subject to bona fide dispute those claims were settled and funded.[24] It is hardly a black mark that Artius proceeded promptly to settle and fund the payment of those claims as settled, and

---

[22] Artius reiterates its lack of objection to that retention, subject only to its reservation of rights in respect of any fees and expenses sought from the Court. *See Alleged Debtor's Limited Objection to Application for Retention of Hayward PLLC as Counsel for the Chapter 7 Trustee Pursuant to 11 U.S.C. §327(a), and Reservation of Rights* [Doc. No. 98].

[23] Mr. Satija claims the *Declaration of Michael Fredrick Marcotte Certifying Matrix of Creditors* [Doc. No. 84] (the "**Marcotte Declaration**") is "unclear" concerning whether other creditors have been paid. To the contrary, the Marcotte Declaration is quite clear on this point, painstakingly identifying all known creditors with debts accrued and owing from the petition date through the date thereof, setting forth their addresses, and stating their payment status as "Current," "Contingent," "Disputed," "Paid in Full," or "Pending."

[24] Mr. Satija's argument that Collaborative Vision has not been paid is addressed in detail above, replete with factual explanation of the history surrounding its business relationship with Artius/Q5id, and required no repetition here. The same is true in respect of his argument that Collaborative Vision would be prejudiced by dismissal, as its rights in the contested Oregon state court litigation would be fully preserved.

the Petitioning Creditors have made no secret of their strong support for dismissal of the case in order for the funds escrowed with their New York counsel to be released in consummation of the settlement. Put simply, despite Mr. Satija's contentions to the contrary, there is no creditor body on whose behalf he needs to act as trustee.

34.     Nor is there any reason for Mr. Satija to be concerned about payment of any reasonable fees and expenses that may be allowed and awarded to his law firm. As made clear at the August 1 Status Conference Artius is fully aware of the need to protect that right to payment, and for that reason the proposed form of Order submitted and uploaded with the Dismissal Motion expressly reserves jurisdiction for the Court to allow, award and direct payment of such fees and costs upon application, notice and hearing. Thus, the interest of Mr. Satija and his firm as creditors is sufficiently protected under section 303(j) and does not override the cause to dismiss that exists under section 707(a).

## VII.     The US Trustee Objection

35.     The US Trustee Objection relies primarily on a blinkered interpretation of the facts in this case. These factual contentions are at odds with the current record and the evidence to be presented at the September 25 hearing. Instead, Artius will demonstrate the following at that hearing:

- Artius has in fact paid the undisputed claims of its creditors in the ordinary course during the involuntary gap period in this involuntary case.

- Those claims have been timely paid, and no delay has been foisted on those creditors notwithstanding the automatic stay.

- Artius continues to pay its ordinary course creditors, has adequate funding to pay all of the outstanding, undisputed claims of its creditors, and as with the Petitioning

Creditors, will pay or settle the disputed claims of Collaborative Vision in the event those claims are upheld in the Oregon state court.

- Artius conducted an appropriate review of its books and records, properly prepared the list of its creditors set forth in the Marcotte Declaration, and properly served the Dismissal Motion on those creditors.[25]

- The settlement between the petitioning creditors and Artius is not collusive, but in good faith and arm's length following months of hard fought litigation.

- Artius and its employees will benefit from dismissal in that Artius will continue to operate as a going concern, generate revenues from operations, and employ its employees.

36.    Finally, contrary to the U.S. Trustee's argument, granting the Dismissal Motion and dismissing this involuntary case would promote the integrity of the bankruptcy system. As set forth more fully above, in its present posture this case is nothing more than a two-party dispute between Artius and Collaborative Vision. The case law is clear that bankruptcy courts are not intended as alternatives to state court litigation or as forums for two-party litigation. Denying the Dismissal Motion and placing Artius in Chapter 7 would likely lead to its wholly unnecessary and value-destructive liquidation,[26] the unemployment of its workforce, and decrease in creditor recoveries—results that hardly promote the integrity of the bankruptcy system that, as mentioned, is not intended to deal with two-party disputes. Respectfully, it is granting the Dismissal Motion,

---

[25] The U.S. Trustee faults Artius for not filing schedules to establish that creditors have been paid or provided notice. This ignores the Marcotte Declaration (which like bankruptcy schedules is signed under penalty of perjury) and the Stay Order (which stayed any obligation to file schedules). It is also irrelevant as the schedules are a snapshot in time and would not reflect that undisputed claims have been paid in the ordinary course.

[26] The alternative of converting the case to a case under Chapter 11 is similarly not viable. In addition to imposing a substantial layer of unnecessary expense on Artius and other parties and impairing its ability to raise additional capital in the market, in the absence of extraordinary relief from this Court, Artius would be precluded from continuing to pay its pre-order-for-relief creditors on time, in full and in the ordinary course as it has been doing on an ongoing basis.

returning Collaborative Vision to the state court, and stopping the inappropriate use of this bankruptcy case as a tool to collect a disputed debt that will vindicate bankruptcy policy and the integrity of the bankruptcy system.

### **Conclusion**

Whether viewed through the lens of section 303(j) or 707(a), the standards for dismissal of this involuntary case are satisfied. Under 303(j), Artius has entered into and fully funded a non-collusive settlement with all three of the Petitioning Creditors who invoked the jurisdiction of this Court, and as described above the interests of all parties—non-objecting creditors being paid in the ordinary course, Collaborative Vision and Mr. Satija as objectors—are sufficiently protected upon dismissal. As for 707(a), it is only this Omnibus Reply from Artius that articulates and examines what constitutes "cause" for dismissal, and in so doing demonstrates that every single one of the applicable factors identified by other courts are satisfied.

For all of the foregoing reasons, the Court should grant the Dismissal Motion, retain jurisdiction to entertain an application from Mr. Satija for the reasonable fees and expenses incurred in his limited role as Chapter 7 Trustee, and deny all of the other pending motions before it as moot.

Dated: September 19, 2024                        Respectfully Submitted,


                                                 By: */s/ Mark D. Bloom*
                                                 Alexander D. Burch
                                                 **BAKER & McKENZIE LLP**
                                                 800 Capitol St., Suite 2100
                                                 Houston, Texas 77002
                                                 Telephone: (713) 427-5000
                                                 Facsimile: (713) 427-5099
                                                 alexander.burch@bakermckenzie.com

                                                 -and-

                                                 Mark D. Taylor
                                                 **BAKER & McKENZIE LLP**
                                                 1900 N. Pearl St., Suite 1500
                                                 Dallas, Texas 75201
                                                 Telephone: (214) 978-3000
                                                 Facsimile: (214) 978-3099
                                                 mark.taylor@bakermckenzie.com

                                                 -and-

                                                 Mark D. Bloom (admitted Pro Hac Vice)
                                                 **BAKER & McKENZIE LLP**
                                                 Sabadell Financial Center
                                                 1111 Brickell Avenue
                                                 10th Floor
                                                 Miami, Florida 33131
                                                 Telephone: (305) 789 8927
                                                 Facsimile: (305) 789 8953
                                                 mark.bloom@bakermckenzie.com

                                                 Counsel for Alleged Debtor artuis.iD

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 19, 2024 a true and correct copy of the foregoing was served simultaneously upon docketing on all counsel of record or *pro se* parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing in this case.

*/s/ Mark D. Bloom*
Mark D. Bloom

**<u>Electronic Notice by CM/ECF</u>**

Jason Bradley Binford
Ross, Smith & Binford, PC
2901 Via Fortuna, Bldg. 6, Suite 450
Austin, TX 78746
jason.binford@rsbfirm.com

See Attached Matrix

**<u>Manual Notice</u>**

None

Label Matrix for local noticing
0542-1
Case 23-11007-cgb
Western District of Texas
Austin

ArtiusID, Inc.
801 Barton Springs
Austin, TX 78704-1146

United States Trustee (SMG17)
United States Trustee*
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

ArtiusID, Inc.
c/o Alexander D. Burch*
BAKER & McKENZIE LLP
800 Capitol St., Suite 2100
Houston, Texas 77002-2947

ArtiusID, Inc.
c/o Robert T. DeMarco*
DeMarcoMitchell, PLLC
12770 Coit Road, Suite 850
Dallas, TX 75251-1364

~~Collaborative Vision LLC~~
~~c/o Cokinos Young~~
~~1221 Lamar 16th Fl~~
~~Houston TX 77010-3039~~
Self-Terminated on 08/23/2024

Collaborative Vision LLC
c/o Lynn Hamilton Butler*
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, TX 78701-4093

———————————————
~~c/o Emma P. Myles~~
~~Cokinos Young~~
~~1221 Lamar Street, 16th Floor~~
~~Houston, Texas 77010-3039~~
Self-Terminated on 08/23/2024

Collaborative Vision, LLC
c/o Kell C. Mercer, PC*
901 S Mopac Expy Bldg 1 Ste 300
Austin, TX 78746-5883

~~Collaborative Vision, LLC~~
~~c/o Trez Gibbs~~
~~Cokinos Young~~
~~1221 Lamar, 16th Fl.~~
~~Houston, Texas 77010-3039~~
Self-Terminated on 08/23/2024

Goldstein Consulting Services, LLC
c/o Michael T. Conway, Esq.*
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017-2856

Rearc LLC
c/o Michael T. Conway, Esq.*
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017-2856

Ron Satija, Chapter 7 Trustee
c/o Todd Headden*
Hayward PLLC
7600 Burnet Road, Suite 530
Austin, TX 78757-1269

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450
c/o Shane P. Tobin*

Xmogrify
c/o Michael T. Conway, Esq.*
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017-2856

Alexander D. Burch*
Baker McKenzie LLP
700 Louisiana, Suite 3000
Houston, TX 77002-2871

Eric A Liepins*
Legal Aid of Northwest Texas
1515 Main Street
Dallas, TX 75201-4841

Mark D. Bloom*
Baker McKenzie LLP
1111 Brickell Ave
Ste 10th Floor
Miami, FL 33131-3122

Robert T DeMarco III*
Robert Demarco
12770 Coit Road
Suite 850
Dallas, TX 75251-1364

Ron Satija*
P.O. Box 660208
Austin, TX 78766-7208

*Parties served by ECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Collaborative Vision, LLC
c/o Lynn Hamilton Butler
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, TX 78701-4093

End of Label Matrix
Mailable recipients    20
Bypassed recipients     1
Total                  21