IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ARTIUSID, INC., | § § | CASE NO. 23-11007-CGB |
| Debtor. | § § § | Chapter 7 |

### TRUSTEE'S MOTION TO REOPEN EVIDENCE

TO THE HONORABLE CHRISTOPHER G. BRADLEY,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Ron Satija, Chapter 7 Trustee (the "Trustee") in the above-captioned case, and files this, his *Motion to Reopen Evidence* (the "Motion to Reopen"), and in support thereof, would respectfully show as follows:

### BACKGROUND

1. On September 25, 2024, the Court held an evidentiary hearing (the "Dismissal Hearing") to consider, *inter alia*, the *Consent Stipulation and Motion for Dismissal of Involuntary Petition under Chapter 7* [ECF No. 88] (the "Motion for Dismissal") filed by ArtiusID, Inc. (the "Debtor"). At the hearing, the Court took appearances from counsel for the Debtor, the Trustee, petitioning creditors Xmogriphy, LLC, Goldstein Consulting Services, LLC, and Rearc LLC (the "Petitioning Creditors"), creditor Collaborative Vision, Inc. ("Collaborative Vision"), and the United States Trustee (collectively, the "Parties"). Along with statements of the aforementioned counsel, the Court was presented with evidence submitted on behalf of the Debtor, the Trustee, and Collaborative Vision. Following the closing of evidence, but prior to the Parties' closing arguments, the Court adjourned the hearing until Monday, October 7, 2024, at 3:00 p.m.

2. After adjournment of the Dismissal Hearing, the Trustee came to learn of new and important evidence (detailed below) relevant to the Court's consideration of the Debtor's Motion for Dismissal. If permitted, the Trustee would move to introduce this evidence at Monday's hearing prior to the Parties' presentation of closing arguments.

3. As part of the arrangement to abate the instant involuntary chapter 7 proceeding, the Debtor was ordered on August 8, 2024, to disclose and serve notice to all creditors. *See* Order Abating Proceedings, ¶ 2 [ECF No. 83].[1]

4. The following day, the Debtor filed a declaration under penalty of perjury purporting to identify all creditors. *See* Declaration of Michael Marcotte [ECF No. 84]. In reality, the Debtor did not disclose (nor, therefore provide notice to) at least two significant creditors: 1) IOActive, Inc. ("IOActive"), owed approximately $100,796.00; and 2) Skypoint Cloud, Inc. ("Skypoint"), owed approximately $272,838.35. The foregoing creditors have since filed proofs of claim nos. 2-1 and 3-1, respectively. The proof of claim of IOActive is attached hereto as Exhibit A.

5. When the Debtor's witness, its CEO Michael Marcotte, was asked at the Dismissal Hearing why, in response to the Court's Order Abating Proceedings, the Debtor did not disclose the IOActive claim, Mr. Marcotte gave remarkably vivid testimony about why the Debtor could not be expected to know anything about the IOActive claim:

> Q: . . . First, IOActive, when's the first
> time you heard of any entity called IOActive?
> A: Approximately one year ago I received -- I
> remember where I was. I was outside of Toronto
> at the time and I got a telephone call and in

---

[1] The Debtor was also ordered to add all creditors to the Debtor's Creditor Matrix. To date, the Debtor has not complied with the Court's Order.

> my 40 plus career, there's no hyperbole here, it was the most bizarre and unhinged one way call I've ever heard.
>
> It was a man purporting to be with some organization called the Swisher Group. My memory is pretty good. He said, I am Henry with the Swisher Group by and for the firm. I don't even know what that means.
>
> So I let him carry on for a few minutes very aggressively. I then asked him if he was a licensed attorney. He said, no, and then hung up the phone.
>
> In the next hour, I received no less than 12 telephone calls that were unhinged. I turned him over, respectfully and politely, to our Oregon counsel, Darius Hartwell at Schwabe, that was the last I'd heard of him. It was bizarre.
>
> Q: And what is your understanding as to whether -- as to what happened once you turned over this person who apparently is a collection agent for IOActive.
>
> A: That would be speculative and my nature is -- speculation, but yeah, probably.
>
> Q: Okay. So what happened?
>
> A: I don't know.
>
> Q: Was the matter resolved?
>
> A: I don't know. I didn't hear from him again.

Transcript of Hearing, pp. 70–71, September, 25, 2024.

6. Later on, another witness of the Debtor, Dominic O'Dierno, was asked about the process by which the Debtor arrived at the list of creditors:

> Q: Okay. What did you do as part of the process to learn to learn about the various creditors of ArtiusID as of November 30th, 2023?
> A: I reached out and got some assistance from folks who interact with our accounting processes. I myself looked. So we did a teach approach, as Mr. Marcott [sic] described earlier.
>
> We looked at all the available information, put our list together, and then we said are we missing anything, what else could there be, and thought about customers and vendors *that we dealt with on a daily basis that we should look for*.

Tr. at 113 (emphasis added).

7. Mr. O'Dierno's testimony is that he searched for "customers and vendors that [the Debtor] dealt with on a daily basis. . . ." The process was not crafted to find creditors with claims that were past due, defaulted, disputed, etc. Rather, it was designed to find, and thus disclose, only the creditors paid on a regular basis, thereby missing a massively important category of claims—those in default or disputed.[2] The Trustee has worked with unsophisticated, individual, *pro se* debtors who understood this basic principle, which has apparently escaped the Debtor's vaunted "best practices."[3]

8. Specifically, the Debtor's flawed methodology had no way of capturing the emails attached to the Affidavit of Jennifer Steffens (attached hereto as <u>Exhibit B</u>), the CEO of IOActive, Inc.

---

[2] The above-described process constitutes a total failure of "Bankruptcy 101."
[3] Tr. at 87.

9. At the Dismissal Hearing, Mr. Marcotte proceeded to testify regarding IOActive's claim:

> A: . . . And just going back to the best practice piece, if IOActive was legitimately owed money, I don't have any problem having a conversation with their principal and saying, hey, did you do the work, what's the work, you know, we'll pay you or we'll negotiate something out. It's just -- it's not that hard.
> Q: Okay. Coming to that, are you willing to put aside the $100,796 that IOActive claims it is due and put it into trust and hold it there until you figure out whether this is a legitimate claim?
> A: Of course. In determining if it's a legitimate claim or not requires a conversation with IOActive to determine whether or not it's valid.

Tr. at 72.

10. However, Exhibit B demonstrates that the Debtor <u>did</u> have numerous communications "with actual IOActive to determine whether or not it's valid" after Mr. Marcotte took the helm of the Debtor. As shown by the attached email thread, Anthony Clem, the "Chief Information Security Officer (CISO)" and Becky Wanta, the Debtor's "BOD, COO & Global CIO/CTO" conceded that the debt was owed, that the Debtor did not have the funds to pay it, and that the Debtor would enter into a payment plan.

11. The Debtor, of course, never paid.

12. The emails indicate that the reason this undisputed debt was never paid is that Mr. Marcotte directed the Debtor to "audit" it. Whether an audit took place, or what happened afterwards is unclear. Despite the existence of the above-described communications which the Debtor would have uncovered via simple but thorough search functions, the Trustee believes the Debtor chose not to disclose a known creditor. Moreover, while Mr. Marcotte concedes the simplicity of paying a legitimate creditor, it is clear from IOActive's proof of claim that the Debtor refused to do so. *See* Exhibit A, p.32.

13. The evidence of communications in Exhibit B rebuts the Debtor's purported candor to the Court and bolsters the Trustee's skepticism of the Debtor's last-minute attempt to stave off dismissal by proposing an "escrow arrangement." This escrow arrangement, which has yet to be shared with the Trustee despite representations to the contrary, would require the Debtor to escrow funds equivalent to 110% of what is owed to creditors and then take the dispute to "a court of competent jurisdiction." As demonstrated in Exhibit B, the Debtor does not actually have a true dispute with IOActive, thereby undermining the Debtor's representations regarding its proposed exit strategy. The Debtor simply strung IOActive along because it either did not want to pay or could not pay.

14. It was only after this Court identified a similar pattern of actions regarding the Petitioning Creditors in its *Order Setting Status Conference on Motion for Rehearing of the Order for Relief* [ECF No. 74] that the Debtor then chose to do the right thing. The Trustee firmly believes that the Debtor will do the same to IOActive and Skypoint. At best, the Debtor does not have good accounting and document management practices (and the right hand does not know what the left hand is doing). At worst, the Debtor is acting in bad faith. The Trustee believes the best outcome is one in which the Debtor's case stays in the Bankruptcy Court, where <u>one</u> court can keep an eye

on its shenanigans as it either liquidates or reorganizes, instead of the Debtor deploying its deceptive strategies among multiple courts.

## ARGUMENT

15. The Court should admit new evidence when the movant has a bona fide explanation for not offering the evidence earlier, the evidence is probative, and reopening the evidence will not cause undue prejudice. *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1160 (1st Cir. 1996). The court has wide discretion to reopen the evidence. *Zenith Radio v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 331 (1971).

16. In this case, the Court should reopen the evidence because the Trustee seeks to introduce evidence which is decisive, relevant, admissible, technically adequate, and helpful to the fact finder. *United States v. Parker*, 73 F.3d 48, 53 (5th Cir. 1996), reh'g granted, 80 F.3d 1042 (5th Cir. 1996) (reviewed for abuse of discretion), reinstated in relevant part, 104 F.3d 72 (5th Cir. 1997).

17. The introduction of additional evidence will not cause undue delay. *Blinzler*, 81 F.3d at 1160. In the Trustee's opinion, this proceeding is already on a far-too expedited track, and the Trustee believes that, actually, a brief delay could be beneficial to the process to allow the court and the other parties to force transparency from the Debtor and for all parties to achieve a just outcome.

18. The introduction of additional evidence will not cause an injustice or undue prejudice to any party. The Trustee and Collaborative Vision uncovered creditors who did not receive appropriate notice of this proceeding. It is crucial for the Court to provide those parties with an opportunity to appear and represent their interests in this proceeding.

19. The Trustee was diligent in producing his evidence but was reasonably and genuinely surprised by the need for additional evidence. *Rivera-Flores v. P.R. Tel. Co*., 64 F.3d 742, 747 (1st Cir. 1995). The additional evidence is not cumulative. *See Johnson v. Busby*, 953 F.2d. 349, 350-351 (8th Cir. 1991).

20. Finally, in anticipation of the Debtor's evidentiary objection, the Trustee would note that the evidence sought to be admitted is not hearsay, because the evidence comprises statements and admissions of a party-opponent. Additionally, the evidence qualifies as an exception to the rule against hearsay under the "business records" exception.

21. Federal Rule of Evidence 801(2) provides that a statement of an opposing party is not hearsay. FED. R. EVID. 801(2). An "opposing party's statement" is a "statement [which] is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy. *Id*. A party-opponent's declaration is admissible for any inference which a trial court can reasonably draw from a statement regarding any issues involved in the case. *United States v. Matlock*, 415 U.S. 164 (1974).

22. Jennifer Steffens, the CEO of IOActive, has provided the emails included in Exhibit B via a business records affidavit, which is an exception to the rule against hearsay pursuant to Federal Rule of Evidence 803(6). FRE 803(6) defines "records of a regularly conducted activity" as a "record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was

kept in the course of a regularly conducted activity of a business, organization, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. FED. R. EVID. 803(6).

## CONCLUSION

23. The evidence the Trustee seeks to admit will show that the Debtor filed a false declaration purporting to identify all creditors, in direct contravention of this Court's Order. Given the testimony of the Debtor's officers at the Dismissal Hearing, the Trustee cannot in good conscience let closing arguments proceed without fully informing the Court of the foregoing rebuttal evidence.

WHEREFORE, premises considered, the Trustee requests the Court enter an order 1) reopening the evidentiary portion of the Dismissal Hearing to allow admission of the Trustee's Exhibits A & B; and 2) for such other and further relief as is just and proper.

Dated: October 4, 2024                  Respectfully submitted,

**HAYWARD PLLC**

*/s/ Ron Satija*
Ron Satija
SBN. 24039158
Todd Headden
SBN. 24096285
Bach W. Norwood
SBN: 24134529
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/Fax)

rsatija@haywardfirm.com
theadden@haywardfirm.com
bnorwood@haywardfirm.com

***Attorneys for Ron Satija, Chapter 7 Trustee***

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically via the court's CM/ECF system on October 4, 2023 thus effecting service on any parties requesting service thereby.

/s/ *Bach W. Norwood*
Bach W. Norwood